**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **Nawel Ali** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No: 18-1385** |
| **BC Architects Engineers PLC** | ) | |
| | ) | **Jury Demand** |
| **Defendant.** | ) | Retaliation Under 42 U.S.C |
| | ) | §1981 |
| | | Plaintiff's 2nd Amended Complaint |

**Introduction**

In light of the October 16, 2020 decision from the Fourth Circuit in the matter of *Ali v. B.C. Architects*, Appeal No, 19-1582, Ali through her undersigned counsel files this 2nd Amended Complaint on the sole count of retaliation under 42 U.S.C §1981, against the Defendant B.C Architects Engineers PLC. Ali is an Arab-American female. She is from Syria. Ali was employed by the Defendant, BC Architects Engineers PLC (BC Architects), from March 9, 2015 to April 15, 2016. While at BC Architects Engineers, Ali was subject to discrimination based on her race, (Arab), and was retaliated against because she complained about the discriminatory behavior. BC retaliated against Ali by terminating her on 4/15/2016.

Consequently, Ali now brings this complaint of retaliation under Section 1981 against the Defendant BC Architects for

damages in the minimum amount of three million dollars ($3,000,000.00).

**Part I. Parties**

1. Plaintiff Ali is an Arab female and traces her ancestry to Syria. She is also a Muslim. Ali is a former employee of Defendant BC Architects Engineers. She was employed as a CAD designer and earned approximately $55,000 per year. Ali is an employee under 42 U.S.C 2000 *et seq*.
2. The Defendant BC Architects Engineers is an architectural and engineering firm located in Falls Church, VA. They are an employer under 42 U.S.C 2000 *et seq.*

**Part II. Jurisdiction & Venue**

3. The Court has jurisdiction of this case under 28 U.S.C. § 1331 and/or 28 U.S.C. § 1332.
4. Venue is proper in the Eastern District Court of Virginia under 28 U.S.C. §1391, because Plaintiff worked at Defendant's Falls Church, Virginia location which is located within this Court's jurisdiction. A substantial part of the claims and defenses to the action occurred within the Court's jurisdiction, in that Ali was discriminated and verbally harassed within this jurisdiction, and was also retaliated against within the Court's jurisdiction.

## Part III. Exhaustion of Administrative Remedies

5. None. Ali has no administrative filing requirements under Section 1981

## Part IV. Statement of Facts

6. Ali has a Bachelors (B.S) in structural engineering from Aleppo University, Syria. Ali is an Arab female and was employed with BC Architects as a CAD Designer, earning approximately $55,000 per year from March 9, 2015 to April 15, 2016.

7. She had a contract for employment and wages with the Defendant.

8. Eric Chuck (Chinese-American) male was employed as a structural engineer with the Defendant.

9. On September 14, 2015, the owners of the company, Brian Quinn[1] (Caucasian, American male) and Chris Morin (Caucasian, American male), told Ali to stop doing work as a CAD designer and focus only on structural engineering duties.

10. Ali was told that she was to assume all of Chuck's structural engineering duties after his departure, within two weeks.

11. On September 28, 2015, Chuck left the defendant for employment elsewhere.

---

1 https://www.linkedin.com/in/brian-quinn-1207012/

12. Chuck gave Ali all the codes and notes that he had on structural engineering because Ali was now assuming his duties.

13. On September 29, 2015, a co-worker, Allen told Ali that Sohrab Begherzadeh (Iranian-American, Shia male), the project manager, wanted Ali to do CAD drawings. A structural engineer's duties encompass more than the duties of a CAD designer.

14. On September 30, 2015, Ali arrived late to the office. Upon arrival, Ali was surprised to find that most of her co-workers sent her emails asking her to do CAD drawings. A few minutes later Mr. Begherzadeh came to Ali's desk and yelled at her and falsely accused her of cheating the company by coming late and leaving early. Ali subjectively believed that Begherzadeh was condescending to her because of her race and ethnic characteristics, in this case because Ali was from Syria and Begherzadeh being from Iran. Begherzadeh would also frequently treat Nasrin Eshagi, condescendingly.

**1st Protected Activity**

15. Ali went to the owners immediately and reported the issue concerning Mr. Begherzadeh and that he was discriminating against her because of her race and/or her protected class. The owners said they would investigate the matter.

16. On October 1, 2015, after no investigation on this matter was conducted, Ali felt that the owners were simply going to ignore her. Thus around 4:15pm on 10/1/2015, she sent an email to Chris Morin describing her interactions with Begerzadeh.

17. On October 2, 2015, the company owners Morin and Quinn called Ali into their office.

18. Both Morin and Quinn informed her that (a) after speaking to her co-workers and (b) because of the lack of cameras in the workplace, they were unable to corroborate her claims of discrimination against Begerzadeh.

19. Morin and Quinn then told Ali that she was over-reacting and that it maybe because of the civil war in Syria.

20. On October 12, 2015, Ali travelled to Turkey for vacation. Defendants were notified of her travel plans to Europe sometime in August 2015.

21. Both Morin and Quinn repeatedly asked her if instead of travelling to Turkey, she had any plans to visit Syria? They also asked her, if she was traveling to Syria via Turkey. They also asked her if she was travelling to Turkey and Europe alone, or with her family.

22. Ali subjectively felt and believed that their repeated questioning about her travels to Turkey and/or Syria as a lone traveler implied that Ali was going on some

clandestine/terrorist mission to Syria, and that Ali was secretly planning to be a suicide bomber or *jihadist.*

23. These repeated enquiries of her travels also happened when she was in Turkey, when she received a text message from her employers, if she was planning on returning to the United States?

24. Ali replied to the text message, saying "Yes" I am coming back to the USA.

**1st Demotion After Travels to Turkey**

25. On November 2, 2015, after returning from her foreign travels to Turkey, she was surprised to learn that a Caucasian male, Charles Ohrnberger had assumed all her duties as a structural engineer.

26. On November 3, 2015, the Defendant's informed Ali that they have a new client, who needed 40 projects completed on an aggressive schedule. Ali worked on the project day and night, and completed the assignment in less than 5 weeks. Defendant's informed her that she had done a good job on the project.

27. Sometime in December 2015, she heard from her co-workers that the company was in need of more structural engineers. Having previously assumed the duties of Chuck (the prior structural engineer), Ali informed Morin that because she was familiar with the work and the software used, she would like

to apply and be considered for the structural engineer position. Having a Bachelor of Science in Structural Engineering, Ali believed she was qualified for the "Structural Engineering" position.

28. Morin told her, "I am glad that you came and I will get back to you [on the structural engineer position]."

29. Sometime before Christmas 2015, the Defendant's hired Bintao Qin (Chinese Asian male) and Khalid Eid as structural engineers.

30. Eid left 2 weeks after his start date, because he found another employment.

31. Ali alleges that BC Architects discriminated against her because of her race (Arab) when they offered the structural engineering position to Bintao Qin (Chinese Asian male) and/or Eid.

32. On January 15, 2016, Ali received a 3% raise, the Defendant also offered her the project coordinator position. Ali had applied for the position of a structural engineer. A structural engineer earns more than a "project coordinator."

33. During this time, Ali also asked why she was not chosen as the structural engineer?

**801(d)(2)(D) Admission**

34. Morin replied, "If we find a CAD drafter as good as you, we will hire you as a structural engineer."

35. On February 9, 2016, Ali asked Morin and Quinn to give her a raise, because she was doing 3 jobs at the company. Morin and Quinn said that they are going to think about it and get back to her.

36. On February 17, of 2016, Morin and Quinn denied Ali a raise. Ali alleges that she was denied a raise because of her prior protected activities.

**2nd Demotion After Travels to Turkey**

37. On March 21, 2016, Ali took a 4-day day vacation by travelling to Turkey. Ali was sponsoring her mother to live in the USA. Ali had an appointment with the U.S Embassy in Ankara, Turkey.

38. Once again like her earlier travels to Turkey in October – November 2015, upon Ali's return from Turkey, she was demoted again from a "project coordinator" to a CAD Drafter.

39. Ali alleges that like her first demotion in 2015, her second demotion was also related to her travels to a predominantly Arab country - and that the Defendant's harbored racial animus towards Arabs.

40. On March 30, 2016, Ali spoke with the owners Quin and Morin about the demotion. She also informed them that she had trouble working with Begherzadeh as he is rude and condescending to women and Arabs and that he treats her unfairly. Ali also told Morin and Quinn, that there was

discrimination in this company. Ali also said that women have no room to grow within the company.

41. Quinn replied, "this is not true."

42. On April 4, 2016, and April 7, 2016, Ali's son was sick. She sent an email to the employer asking them to let her work from home so she can care for her son.

43. Her request for working from home to care for her son was denied.

44. Request to work from home from non-Arab employees on the other hand is routinely granted.

45. Ali believes that the denial of her request for leave was related to her race, Arab and/or because of her prior protected activities

**April 15, 2016 Protected Activity. Ali was terminated 60 minutes later.**

46. On April 15, 2016, Ali sent an email to Quinn and Morin documenting discrimination and retaliation within the company. This email was sent at 3:07 pm.

47. Ali also subjectively believed and alleges that she was complaining about race discrimination at the workplace.

48. Upon information and belief, the Defendant's read her email sent at 3:07 pm.

49. 60 minutes later on 4/15/2016, at approximately 4 pm Ali would be terminated.

50. On this day on 4/15/2016 around 4pm Quinn angrily approached Ali. His face was red and he was furious. Morin was also present in this meeting with Ali. They immediately told her that, "you are fired and that you are to leave immediately!"

51. Ali asked if she could sit. Morin said, "No!"

52. Ali then asked why she was being fired.

53. Quinn said, "you are causing a lot of problems within the company. You are bringing your mother's problems [of Arabic immigration to the United States] to the company. We don't want you here anymore!"

54. The only knowledge that the Defendant had of Plaintiff's mother was that the mother (an Arab) was immigrating from a majority Arab nation to the United States - a non-Arab nation.

55. The statement by Quinn is an admission under FRE 810(d)(2)(D) of racial bias and animosity towards Arabs.

56. Ali also subjectively believed that Quinn was aghast at her mother immigrating to the United States, and that he was hostile towards her mother, because she was an Arab.

57. Ali then told them, she was being fired because of her prior complaints under Title VII.

58. Title VII is a federal statute that protects employees from discrimination at the work place based on their protected classes of race, sex, and national origin.

59. Quinn said, "that is not true."

60. Morin then opened the door and asked her to leave. As Ali went to her desk, both of them closely monitored her, standing over her in a threatening manner. When she tried to retrieve her personal files from her computer, Morin yelled at her, saying, "you can't take your files! This is our work" and forcefully shut down the computer.

61. Morin and Quinn treated Ali like she was a criminal and a terrorist. Her colleagues who witnessed this behavior was shocked at the child like tantrum thrown by Morin and Quinn.

62. When Ali tried to say good bye to her work colleagues, both Morin and Quinn prevented her from doing. They then walked her towards the door, gave her a bad and angry look and slammed the door behind her.

63. As Ali was walking towards her car, Quinn walked to her to collect the office keys and said, "you are a very talented person but you created a lot of problems to this company and things are not working out with you." Ali was crying. She gave Quinn the office keys and left.

64. Once again, prior non-Arab employees upon termination were not treated like Ali. Other employees outside her protected class were allowed to take their time to collect their files and other personal belongings upon termination.

65. One of her co-workers called her later, and informed her that both Morin and Quinn even changed the door locks after her termination.

66. Upon information and belief, the Defendant then replaced her with an individual outside of Plaintiff's protected class. A non-Arab male.

67. Defendant's have an insurance policy that will indemnify them for this lawsuit.

## Part V. Causes of Action
## COUNT I. RETALIATION UNDER § 1981

68. Plaintiff alleges and incorporates all the above paragraphs.

69. Plaintiff engaged in protected activities and opposition to practices made unlawful under Section 1981 while employed by the Defendant.

70. Ali also subjectively believed that she was complaining about race discrimination in her complaints to her employer.

71. As a result of her protected activities and opposition to practices made unlawful under Section 1981, Plaintiff was subjected to adverse employment actions, including but not limited to her termination on April 15, 2016.

72. A casual connection exists between Plaintiff's protected activities and the adverse employment actions taken by

Defendant. *See Ali. v. B.C. Architects*, Appeal No. 19-1582 (4th Cir. October 16, 2020).

73. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

74. As a consequence of Defendant's action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## Part VI. Relief Sought

**WHEREFORE**, the Plaintiff respectfully requests this Court award economic damages to be proved at trial, and in addition:

A. Enter judgment for the Plaintiff against the Defendant BC Architects Engineers PLC, on all Counts, in an amount no less than three million dollars ($3,000,000.00)

B. Declare that the conduct of the Defendant is in violation of Section 1981,

C. Award Plaintiff Ali reinstatement, punitive damages, full back pay and front pay, including salary, benefits, entitlements, loss of professional status and career-enhancing opportunities, bonuses', cash awards, loss of retirement savings and benefits and other remuneration and privileges of employment retroactive to the date of any unlawful employment action found to have occurred in this case.

D. Award Plaintiff Ali compensatory damages for emotional distress injuries and loss;

E. Award Plaintiff pecuniary and out of pocket expenses;

F. Order Defendant to pay all reasonable attorney's fees, court costs, and expenses incurred by Plaintiff as a result of Defendants' actions and inactions, as well as pre judgment and post-judgment interest; and

G. Order such other equitable and legal relief as the Court deems just and appropriate.

**Part VII. Jury Trial Demanded**

Plaintiff demands a jury trial for this action.

Respectfully Submitted,

/s/ Monique A. Miles, Esq.
VSB 78828
Old Towne Associates, P.C.
Attorneys at Law
216 South Patrick Street
Alexandria, VA 22314-3528
Phone: 703-519-6810

/s/A.J. Dhali
Dhali PLLC
D.C. Bar No. 495909
1629 K Street. NW. Suite 300
Washington D.C. 20006
T: (202) 556-1285
F: (202) 351-0518
Email: ajdhali@dhalilaw.com
January 7, 2021

**Certificate of Service**.

A copy of the foregoing 2nd Amended Complaint was filed via ECF on 1/7/2021 with copies sent to counsel for the Defendant.

/s/ Monique Miles