IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NEWEL ALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:18-cv-01385 (AJT/MSN) |
| | ) |
| BC ARCHITECTS ENGINEERS, PLC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER**

In this race-based discrimination case, Plaintiff claims that Defendant terminated her employment on April 15, 2016 in retaliation for two complaints she made: (1) a March 30, 2016 oral complaint about discrimination; and (2) an April 15, 2016 written complaint that, *inter alia*, recounted her complaint on March 30, 2016. Defendant has filed a Motion for Summary Judgment [Doc. No. 68] (the "Motion"). The Court held a hearing on the Motion on May 5, 2021, following which it took the Motion under advisement. Upon consideration of the Motion, the memoranda filed in support thereof and in opposition thereto, including Plaintiff's supplemental filings, the argument of counsel at the hearing, and for the reasons that follow, the Motion is GRANTED and judgment will be entered in favor of Defendant.

I. BACKGROUND

A. Procedural History

On February 11, 2019, Plaintiff filed a First Amended Complaint ("FAC"), alleging five counts, three for discrimination under 42 U.S.C. § 1981 (race discrimination, hostile work environment/harassment and retaliation), one for a violation of the Fair Labor Standards Act of

1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA"), and one for a breach of contract. [Doc. No. 13]. On May 1, 2019, the Court dismissed all five counts in the FAC. [Doc. No. 25].

On October 15, 2020, the Fourth Circuit affirmed the dismissal of Plaintiff's race discrimination and hostile work environment/harassment claims under § 1981, her FLSA claim and her breach of contract claim. *Ali v. BC Architects Engineering, Plc*, 832 F. App'x 167 (4th Cir. 2020), *as amended* (Oct. 16, 2020). The Court of Appeals also affirmed the dismissal of her § 1981 retaliation claim based on her denial of a promotion to structural engineer in December 2015, after she had complained about race discrimination within the company about three months before applying for the position. *Id.* at 9-10 ("[T]he temporal proximity between that reporting and BC's failure to select her for the position is too tenuous to support a reasonable inference of causation[]" and "any inference of retaliation is further weakened by the operative complaint's allegation that Ali was not selected for the structural engineer position because she was more valuable to BC as a CAD drafter."). However, the Fourth Circuit concluded that Plaintiff had plausibly alleged a § 1981 retaliation claim based on the temporal proximity between her termination on April 15, 2016 and her alleged oral complaint of discrimination on March 30, 2016, followed by Defendant's alleged denial of her reasonable requests to work from home to care for her sick son.[1] *Id.* at 10-11. It therefore reversed and remanded for further proceedings as to that claim.

---

[1] The Fourth Circuit also observed that the "contradiction [between her allegation that she reported racial discrimination on March 30, 2016 and the substance of her April 15, 2016 email] is insufficiently clear to override our obligation to accept the operative complaint's factual allegations as true" and, in any event, "because we rely on Ali's March 30, 2016 oral complaint of race discrimination to resolve whether the district court properly dismissed her retaliatory-termination claim, we need not decide whether Ali's April 15, 2016 email also complained of racial discrimination, as the complaint indicates she subjectively believed." *Ali v. BC Architects Engineering, Plc*, 832 F. App'x 167, 173, n.5 (4th Cir. 2020), *as amended* (Oct. 16, 2020).

2

On January 7, 2021, Plaintiff filed a Second Amended Complaint limited to her remaining retaliation claim. [Doc. No. 50] ("SAC"). On April 2, 2021, Defendant filed the pending Motion for Summary Judgment. [Doc. No. 68].

**B. Material Facts As to Which There is No Genuine Issue**

The following facts are undisputed:[2]

Defendant BC Architects Engineers, PLC ("BC" or "Defendant") provides professional services to clients in the telecommunications industry. In March 2015, BC hired Plaintiff as a computer assisted design (CAD) drafter and her employment was terminated in April 2016. SAC ¶ 6. Plaintiff was supervised by Project Manager Sohrab Bagherzadeh and by BC owners Quinn and Morin. In late September 2015, Plaintiff had a verbal dispute with Bagherzadeh after she arrived at work at 12:00 p.m. without informing anyone that she would be late. *Id.* ¶ 14; Mem. in Supp. of Motion [Doc. No. 69] ("Mem."), Ex. 28 at Bates 0003-04. In October 2015, seven months after joining BC, Plaintiff took a three week vacation. SAC ¶¶ 20, 25. On January 15, 2016, BC gave Plaintiff a 3% pay raise. *Id.* ¶ 32. Less than a month later, Plaintiff requested an additional raise, which BC refused. *Id.* ¶¶ 35-36.

From Monday, March 21, 2016 through Thursday, March 24, 2016, Plaintiff was on vacation. Mem., Ex. 1 (Ali Dep. Tr. at 50-53). During this time, other CAD drafters at BC performed work on projects for what is referred to as the Jacobs client. Mem., Ex. 1 (Ali Dep. Tr. at 57); *id.*, Ex. 2 at Bates 3303-17 (emails from Bagherzadeh).

---

[2] Plaintiff has not, as required under Local Civil Rule 56(B), included in her 40 page opposition brief a "section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated." Plaintiff has, however, attached a list of disputed facts, explanation, and argument to her Opposition to the Motion. *See* [Doc. No. 76] (Opp.), Ex. 1 (Ali's Statement of Disputed Facts in Opposition to Defendant's R. 56 Motion). Local Civil Rule 56 provides that "the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Notwithstanding Plaintiff's failure to comply with the Rule, the Court has considered whether there exists any disputed facts based on her entire briefings.

3

On Friday, March 25, 2016 at 12:10 a.m., Plaintiff informed Quinn and Morin that she was unable to come to work after returning from her vacation and proposed that she "make up the hours." Mem., Ex. 1 (Ali Dep. Tr. at 51-52); *id.*, Ex. 3 at Bates 2064. Later that day, Quinn responded, stating "Welcome back. I prefer you makeup the hours . . . . Will you be able to work this weekend?" *Id.*, Ex. 3 at Bates 2064. Plaintiff responded a few hours later stating "We have guests coming over this weekend so I am not sure if I will have time to makeup the hours." *Id.* A few minutes later, Quinn replied, "The task I was going to give you will be handled by Greg. You can make up the hours next week." *Id.*, Ex. 4 at Bates 2067. Plaintiff did not make up any hours owed to BC over the weekend of Saturday, March 26 and Sunday, March 27, 2016. *Id.*, Ex. 1 (Ali Dep. Tr. at 53-55).

On Wednesday, March 30, 2016, Plaintiff met with Quinn and Morin. At her deposition, Plaintiff testified that the meeting lasted "probably an hour," [Doc. No. 76] ("Opp.") at 14 (quoting Ali Dep. 73:12), and that she complained to Quinn and Morin that her "assignment ha[d] been assigned to [Bagherzadeh]" and expressed frustration at having "to work under [Bagherzadeh's] supervision" when she "was a project coordinator" and had been working on this particular client's projects "ever since she came to the company" and had "so much experience with this client"; Plaintiff "reminded [Quinn and Morin] [of] the way [Bagherzadeh] treated [her]," saying he treated her "differently" and "never stop[ped] harassing" her; Plaintiff also "complain[ed] about discrimination," saying she "fe[lt] like there [wa]s discrimination at this company," *id.* at 14–15 (quoting Ali Dep. 75: 1–10). She left the office shortly after that meeting and worked only two hours that day in the BC office, reporting to Quinn and Morin that she needed to make up six hours for that day. Mem., Ex. 5 at Bates 2594.

On Thursday, March 31, 2016, Plaintiff emailed Quinn and Morin, requesting permission to work from home. Mem., Ex. 6 at Bates 2311. Morin responded, wishing her a "Happy Birthday," and granted her permission to work from home. *Id.* Plaintiff responded "Thank you so much :)." *Id.*

As of Friday, April 1, 2016, Plaintiff had 14 work hours to make up and told Quinn and Morin that she was planning to work over the weekend of Saturday, April 2 and Sunday, April 3, 2016 to make up the hours. Mem., Ex. 7 at Bates 2349.

On Saturday, April 2, 2016, Morin emailed Plaintiff and asked her whether she had worked on "just the one site for 7 hours yesterday." Mem., Ex. 8 at Bates 2419. Plaintiff responded via email on April 5, 2016, asking: "Do you mind if I know [who] told you I work on one site only on Friday? I didn't send an email." *Id.* Morin replied on April 5: "No one. I asked because I didn't think that it would have taken you 7 hours to do the one site." *Id.*

On Sunday, April 3, 2016, Plaintiff informed BC that she did not "have a chance to work from home this weekend. I was very busy." Mem., Ex. 9 at Bates 2353.

On Monday, April 4, 2016, Plaintiff did not come to work or perform any work for BC because her son was ill. Mem., Ex. 10 at Bates 2363. She did not request permission to work from home. *Id.* Morin wrote to her and with respect to her son stated: "I hope he's ok." *Id.*

On Wednesday, April 6, 2016, Morin wrote to Plaintiff and informed her that she had 20 work hours to make up and she had negative 8.2 hours of sick time. Mem., Ex. 11 at Bates 2595. The actual number of hours listed as owed to the Company by Plaintiff was 22: eight hours from March 25; six hours from March 30; and eight hours from April 4. *Id.*

On Thursday, April 7, 2016 at 8:29 a.m., Plaintiff requested permission to work from home because her son had a fever. Mem., Ex. 12 at Bates 2654-55. Quinn responded to

5

Plaintiff's request by writing: "Sorry—but your productivity here at the office has not been great. Take care of your child and come in when he's healthy. You already owe us a lot of hours as it is. Working from home is not approved." *Id.* Plaintiff responded "Okay." *Id.*

At 12:54 p.m. on Thursday, April 7, 2016, Glassdoor Alerts sent an email with the subject "13 new jobs for Cad Design Engineer in Washington, DC," one of which was a posting showing BC was hiring a CAD designer, in which role Plaintiff was employed. Opp., Ex. 10.

At 1:15 p.m. on Thursday April 7, 2016, Bagherzadeh reassigned Plaintiff's "Carville" CAD project, which was then overdue, to another employee at BC (Greg). Mem., Ex. 13 at Bates 2682; *id.*, Ex. 2 at Bates 3306.

At 4:53 p.m. on Thursday, April 7, 2016, Bagherzadeh reassigned Plaintiff's "MD3813Whiteford" CAD project, which was then overdue, to another employee at BC (Siraj). Mem., Ex. 14 at Bates 2708; *id.*, Ex. 2 at Bates 3306.

At 10:46 p.m. on Thursday, April 7, Bagherzadeh assigned to Plaintiff the CAD projects "Hebrew Due Friday 4/8/16 3:30 pm, then Porterwood Due Monday 4/11/16 2:30pm." *Id.*, Ex. 15 at Bates 2928, 2927, 2926 (emails dated April 8, 2016 and April 10, 2016). After complications arose on the Hebrew project, Bagherzadeh directed Plaintiff to work on the Porterwood project and complete the work before 5:00 p.m. on Friday, April 8. *Id.*

By the 5:00 p.m. deadline on Friday, April 8, Plaintiff had not completed the Porterwood project and did not work on the Porterwood project over the weekend. Mem., Ex. 16 at Bates 3127.

At 6:22 p.m., on Friday, April 8, 2016, Quinn emailed Bagherzadeh, stating "Thanks for keeping your cool with [Plaintiff] today. She has been extremely difficult today." Opp., Ex. 11 at Bates 3108–3109. Bagherzadeh responded at 7:09 p.m. "I kept calm and cool. . . . It was an

6

interesting day with her but can't expect much else. [She] [d]idn't even give me one site and barley [sic] worked 7 hours with the break and chit chat." *Id.* Quinn responded at 7:35 p.m. that "[i]t's only a matter of time before she's gone. *Id.*

As of Friday, April 8, 2016, Plaintiff had 30 BC work hours to make up. Plaintiff made up no work hours owed to the Company between April 8, 2016 and her termination on April 15, 2016. Mem., Ex. 17 (Morin Affidavit ¶ 7); *id.*, Ex. 18 (Quinn Affidavit ¶ 12).

On Sunday night April 10, 2016, Bagherzadeh reassigned the Porterwood project to Plaintiff with a revised due date of Monday, April 11 at 12:00 p.m. *Id.*

On Friday, April 15, 2016, at 1:04 p.m., Quinn wrote in an email that BC intended to terminate Plaintiff at 4:00 p.m. that afternoon. Mem., Ex. 22 at Bates 3364 ("We will fire her at 4pm."); *see also id.*, Ex. 18 (Quinn Affidavit ¶ 10); *id.*, Ex. 17 (Morin Affidavit ¶ 10).

Plaintiff claims that at 3:07 p.m. on April 15, 2016, she sent to Quinn and Morin an e-mail dated April 15, 2016, attaching a three-page complaint letter with the first line "04/15/2016 at 2:45 pm." Mem., Ex. 20 at Bates 3537–3543 (hereinafter the "Email and Complaint Letter"). Quinn and Morin both have testified under oath that they did not receive or read the Email and Complaint Letter prior to the time the Company terminated Plaintiff on April 15, 2016.[3] Mem., Ex. 17 ¶¶ 14–15; *id.*, Ex. 18 ¶¶ 14–15.

---

[3] Plaintiff did not request a "delivery receipt" or a "read receipt" for the Email and Complaint Letter, Mem., Ex. 1 (Ali Dep. Tr. at 135), or take any other actions to confirm that Quinn or Morin actually received the Email and Complaint Letter, *id.*, Ex. 1(Ali Dep. Tr. at 135-36). Neither Quinn nor Morin was able to locate the Email and Complaint Letter in subsequent searches conducted in May 2016. *Id.*, Ex. 18 (Quinn Affidavit ¶¶ 14-17); *id.*, Ex. 17 (Morin Affidavit ¶¶ 13-14). The BC information technology manager searched the BC email system in May 2016 and was unable to locate the Email and Complaint Letter in the BC email system. *Id.*, Ex. 21 (Wolozyn Declaration ¶ 9). Fat Cow, BC's email vendor, was tasked with searching for any emails in the BC email system from NAli@bcplc.com to cmorin@bcplc.com and bquinn@bcplc.com on April 15, 2016 at 3:07 p.m. and/or at any time between 1:00 p.m. and 5:00 p.m. and the Fat Cow technical representative was unable to locate any information on the email." *Id.*, Ex. 21 (Wolozyn Declaration ¶ 10) and *id.* (Bates 3532-34) (Fat Cow Search Result Ticket).

In the Email and Complaint Letter, Plaintiff states that "I am writing this complaint letter because I experienced female gender discrimination and retaliation in you [sic] company." Mem., Ex. 20 at Bates 3538. She then recounts the instances since her employment that she regarded as "proof to me that you have a female discrimination in your company." *Id*. Those included claims that females received lower raises than men, were not selected for promotions and jobs as engineers in preference to men, and were not allowed to leave early from work or work from home while men were. *Id.* at Bates 3539-3540. Overall, Plaintiff asked "So why this unfair treatment and discrimination against female." *Id*. at Bates 3540.

The Email and Complaint Letter also recounted Plaintiff's meeting with Quinn and Morin on March 30, 2016:

> On March 30th of 2016, I came to your office and I spoke with you about this retaliation ["*because I asked for a raise and because I am a female*"].[4] I reminded you that you told me at the review time that I will be responsible about Jacobs. I also explained to you that I do know all Jacob standards and I have been reviewing the drawings. Most of the last batch of Jacobs's sites came back with no comments. Chris told me "we know you did but Sohrab now is in charge and he is the project manager." I explained to you that this person doesn't treat me fairly and I don't get along with him. I gave you many example[s] about the way he treats me but you ignored that. Brian told me you will be under his supervision and you will submit your drawings to him. I told you that he doesn't know that much about Jacobs. The person who supposed to review other people drawings should have more experience than them. I asked you to put things back to normal like it used to be before my vacation but you rejected my request. *I told you this is unfair and I feel you have a female discrimination in this company and female has no room to grow.* You didn't comment.
>
> When I start working with Sohrab, he made it so hard for me. The minute I gave him my drawings, he will start immediately reviewing them and mark them up. Most of his comments are fake and personal preferences. He doesn't do that to the others but me. I saw him comments on the other people drawings. He misses

---

[4] In the paragraph preceding her account of the March 30, 2016 meeting, Plaintiff states:
> So you demoted me from project coordinator to cad drafter. Which mean you retaliated against me because I asked for raise and because I am a female. When Greg and Sohrab asked you for raise on October of 2015, you did give them a raise. So when the male employee asked a raise, it is okay with you. When a female employee asked for raise, you retaliate against them.

Mem., Ex. 20 at Bates 3539.

8

>many errors that I can easily catch because I was reviewing drawings before. Nasrin saw him many times telling Archana when she goes to ask him questions. He told her do what you can. We haven't received all the info needed from Jacobs yet. Archana told me that he told her to do whatever she can do and he will submit her drawings as is to the client because the client will review them and mark them up any way. I was shocked when I heard that.

Mem., Ex. 20 at Bates 3539 (emphasis added).

On April 15, 2016, at 4:00 p.m., Quinn and Morin met privately with Plaintiff and terminated her employment, following which she left the office. SAC ¶ 49; Mem., Ex. 18 (Quinn Affidavit ¶ 11); *id.*, Ex. 17 (Morin Affidavit ¶ 11). Neither Plaintiff, Quinn, nor Morin discussed or mentioned Plaintiff's March 30, 2016 oral complaint or the April 15 Email and Complaint Letter. Mem., Ex. 1 (Ali Dep. Tr. at 137-41); *id.*, Ex. 18 (Quinn Affidavit ¶¶ 13, 17); *id.*, Ex. 17 (Morin Affidavit ¶¶ 12, 18).

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48

9

("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III. ANALYSIS

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). A plaintiff pursuing such a claim may survive summary judgment in one of two ways: by putting forth direct evidence sufficient to create a genuine dispute of fact as to whether intentional discrimination motivated the employer's action, or, in the absence of such evidence, he may make out a prima facie case using circumstantial evidence under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Through either route, "[t]he ultimate question . . . is whether the plaintiff was the victim of intentional discrimination" in the employer's particular decision that the plaintiff challenges, *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 153 (2000); or alternatively stated, whether "an impermissible factor such as race motivated" the decision, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

To establish a prima facie case of retaliation under § 1981, a plaintiff employee must demonstrate that (1) she engaged in race-based protected activity; (2) she suffered an adverse action; and (3) there is a causal nexus between the protected activity and the adverse action. *CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 452 (2008). In order to sustain a § 1981 claim for retaliation based upon race, the protected activity must also involve race. *See Liegeois v. Johns Hopkins Med.,* 2016 U.S. Dist. LEXIS 53908, *10 (D. Md. 2016) *aff'd* 692 Fed. Appx. 714 (4th Cir. 2017) ("Section 1981 covers only claims for race and retaliation for complaining about racial discrimination.").

The race retaliation complaint must also be objectively reasonable and made in good faith: "[O]pposition activity is only protected if an employee's subjective belief is "objectively reasonable in light of the facts." *Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2017) (Title VII retaliation claim); *Greene v. A. Duie Pyle, Inc.*, 170 F. App'x. 853, 856 (4th Cir. 2006) (same). Finally, Plaintiff must provide evidence of "but-for" causation to avoid summary judgment. *Irani v. Palmetto Health*, 767 F. App'x 399, 421 (4th Cir. 2019).

Where, as here, Plaintiff does not proffer any direct evidence of discrimination, she may defeat summary judgment by satisfying the *McDonnell Douglas* rubric. The Fourth Circuit has described the *McDonnell Douglas* test thusly:

> First, the plaintiff has the initial burden to prove her prima facie case by a preponderance of the evidence, which she may do by proving a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination or retaliation. If such a showing is made, the burden shifts to the defendant to come forward with evidence that if believed by the trier of fact, would support a finding that unlawful discrimination or retaliation was not the cause of the employment action. If the defendant makes such a showing, the presumption created by the plaintiff's prima facie case drops out of the picture, and the burden shifts back to the employee to present evidence from which a reasonable juror could find that the proffered reason was a pretext for discrimination or retaliation. If the plaintiff can demonstrate that the legitimate reasons offered by the defendant were

not its true reasons, but were a pretext for discrimination or retaliation, summary judgment is not appropriate.

*Burgess v. Bowen*, 466 F. App'x 272, 276–77 (4th Cir. 2012) (quotations, alterations, and citations omitted).

In assessing whether the reasons for a plaintiff's termination were "pretext," a plaintiff must offer evidence that the reasons were actually false and "unworthy of credence." *Morgan v. Wells Fargo Bank, N.A.*, 585 Fed. Appx. 152, 153 (4th Cir. 2014); *see also Jiminez v. Mary Washington College,* 57 F.3d 369, 378 (4th Cir. 1995) (stating plaintiff "must prove *both* that the reason was false, *and* that discrimination was the real reason for the challenged conduct") (emphasis in original) (internal quotations and citations omitted). Temporal proximity alone is insufficient to establish pretext, *Morgan v. Wells Fargo Bank, N.A.*, 585 Fed. Appx. 152, 153 (4th Cir. 2014), and certain temporal events may sever the temporal proximity of protected activity and an adverse employment action, *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006).

Here, Defendant clearly took a materially adverse employment action against Plaintiff when it terminated her employment on April 15. The remaining issues are whether Plaintiff engaged in race-based protected activity when she made her March 30 and April 15 complaints and whether there is a causal connection between the complaints and Plaintiff's termination such that Plaintiff has established a prima facie case, and, if so, whether BC has articulated a non-discriminatory reason for her termination, and, if so, whether Plaintiff has proffered sufficient evidence of pretext.

**A. Whether Plaintiff Has Established a Prima Facie Case of Race Retaliation Under 42 U.S.C. § 1981**

    **i. Whether Plaintiff Engaged in Protected Activity**

There is sufficient evidence to establish that Plaintiff engaged in protected activity at her meeting with Quinn and Morin on March 30, 2016, and in her April 15, 2016 Email and Complaint Letter; the issue is whether the evidence is sufficient to establish that she engaged in race-based protected activity. As discussed below, it is undisputed that BC made its decision to terminate Plaintiff before Plaintiff claims she sent the April 15, 2016 Email and Complaint letter; and Plaintiff's retaliation claim therefore requires that she engaged in race based protected activity at the March 30, 2016 meeting.

The only evidence concerning the substance of Plaintiff's discrimination complaint on March 30, 2016 is her April 15, 2016 Email and Complaint Letter; Plaintiff's EEOC charges, filed on June 22, 2016; Plaintiff's March 4, 2021 deposition; and her April 23, 2021 answers to interrogatories in this action. As discussed above, neither her deposition testimony nor the Email and Complaint Letter mentions race in connection with her complaints about discrimination. And her Email and Complaint Letter, in particular, clearly reference only gender discrimination. In her EEOC charge, filed on June 22, 2016, Plaintiff checked the boxes for discrimination based on sex, religion, national origin, and retaliation, but not race. Mem., Ex. 24. In her complaint with the County of Fairfax, Virginia, also filed on June 22, 2016, Plaintiff, through counsel, filed and checked the box for "race," among other issues, but did not include any allegations of race-based discrimination. *See* Mem., Ex. 25 at 3 (stating Quinn and Morin "asked me if I was going to Syria" and "also asked me if I was traveling alone, or with my family to Turkey as if implying that I was going to be a jihadist in Syria"). Her answers to interrogatories, on the other hand, submitted after her deposition, state that she had complained about race discrimination at the March 30 meeting and again in her Email and Complaint Letter.[5]

---

[5] Ali gave, in pertinent part, the following response to interrogatory 2 of BC's First Set of Interrogatories:

On its face, Plaintiff's interrogatory responses are starkly at odds with her deposition testimony and the substance of her Email and Complaint Letter, which described both the type of discrimination she complained about at the March 30 meeting as well as generally. Courts have taken a rather dim view of post deposition revisions to deposition testimony in order to create a factual issue for trial. *See Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 422 (4th Cir. 2014) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.") (internal quotations and citations omitted). Nevertheless, it appears from her interrogatory answers that Plaintiff's current recollection is that she complained of race discrimination at the March 30, 2016 meeting and presumably will so testify at trial. That anticipated testimony appears to be undercut substantially by the other evidence referenced above, but the Court cannot say that it directly contradicts her deposition testimony. For example, while she did not specifically complain about discrimination on the basis of race and only mentioned explicitly discrimination based on sex, she was not asked whether she ever mentioned race discrimination, as she had previously in 2015, or thought she was referring to race as well as sex discrimination; and she did not affirmatively testify that she did not mention or think that she was referring to

---

2. Describe in detail each and every time you communicated to another person that you believe you experienced race discrimination and/or race retaliation while employed by BC.
Objection: None
Response: There are two times when I discussed with my employer about race discrimination. (1) On March 30, 2016, I informed Quinn and Morin that there was race and sex discrimination at work; Quinn said that "this is not true." (2) Again, on the last day of my work on April 15, 2016, at around 3 PM, I sent an email from my work computer to Quinn and Morin about discrimination in the company. I told them there was race and sex discrimination when I made reference to Virginia law and the Fairfax County Human Rights Ordinance in my letter that was emailed to them. The Fairfax County Human Rights Ordinance talks about race discrimination. I am not a lawyer, and so when I mentioned the Fairfax County human rights ordinance, it covers race discrimination. 60 minutes later while I was doing my work, I was terminated by Quinn and Morin. . . .
Opp., Ex. 11, PageID#1101.

race discrimination. For these reasons, the Court will find that there is evidence sufficient to create genuine issue of material fact concerning whether Plaintiff complained of race discrimination at the March 30, 2016 meeting.

> ii. **Whether There was a Causal Connection Between the March 30 and April 15 Complaints and Plaintiff's Termination**

Based on temporal proximity, Plaintiff has established a prima facie case of causality between her March 30 complaint and her termination on April 15, 2016. The evidence is undisputed, however, that BC made the decision to terminate Plaintiff before she sent her April 15 Email and Complaint letter, thereby negating any causality between that communication and her termination. *See* Mem., Ex. 22 at Bates 3364 (email at 1:00 p.m. stating: "We will fire her at 4pm."); *id.*, Ex. 18 (Quinn Affidavit ¶ 10); *id.*, Ex. 17 (Morin Affidavit ¶ 10); *see also* Opp., Ex. 1 (Ali's Statement of Disputed Facts in Opposition to Defendant's R. 56 Motion) at 13 ("Plans to finalize her termination were set in motion after her March 30, 2016 protected activity.").

**B. Defendant Has Proffered Legitimate, Non-Discriminatory Reasons for Terminating Plaintiff**

Having established a prima facie case of retaliation, the burden shifts to the BC to proffer a legitimate non-discriminatory reason for Plaintiff's termination. BC has clearly carried that burden. In that regard, BC has stated that it terminated Plaintiff based on her lack of productivity, poor work performance, failure to complete assignments in a timely manner, her inability to work under her supervisor, excessive requests for leave, failure to make up hours taken for leave, failure to be a team player in the company, insubordination, and unacceptable attitude towards supervisors and co-workers. Mem., Ex. 18 (Quinn Affidavit) ¶¶ 9–10; *id.*, Ex. 17 (Morin Affidavit) ¶ 11. It is "widely acknowledged that reasons such as low productivity and conflicts with persons in positions of authority constitute legitimate nondiscriminatory reasons justifying

discharge." *Beards v. BronxCare Health Sys.*, 2021 WL 704177, at *13 (S.D.N.Y. Feb. 23, 2021). Plaintiff herself has acknowledged that her productivity declined, that she turned in a CAD drawing late, and that she owed Defendant work hours.

### C. Whether Plaintiff Has Shown Defendant's Proffered Reason Was Pretext for Discrimination

Given BC's non-discriminatory reason for her termination, the burden shifts back to Plaintiff to present evidence sufficient to infer that the proffered reason for her termination was not the real reason but a pretext for discrimination. A plaintiff can create a factual issue as to pretext by presenting "sufficient evidence to create an inference that the proffered legitimate reason for the employment decision has no basis in fact," *Shortt v. Immigration Reform Law Inst.*, No. 1:11-cv-144, 2011 WL 4738657, at *10 (E.D. Va. Oct.3, 2011), *aff'd*, 480 F. App'x 209 (4th Cir. 2012), or that at various times the employer gave inconsistent explanations for the termination, *see E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001). However, relatively minor discrepancies in explanations will not suffice as evidence of pretext. *See, e.g.*, *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1004 (8th Cir. 2012) ("Substantial change in an employer's explanation over time can be evidence of pretext, but an elaboration generally is not."); *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 835 (8th Cir. 2002) (stating where employer has "pointed out an additional aspect of the same behavior" that was the cause for employee's termination which is not "different from the reason originally given, but only a slight elaboration of that reason" it was not probative of pretext); *E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006) (reasoning that although employer's explanations for what convinced it to act were inconsistent, it was clear employee was terminated for violation of employer's rule, and any discrepancies concerning how the information was processed was not evidence of pretext).

Plaintiff contends that pretext can be inferred from the changes over time in BC's proffered reasons for terminating Plaintiff. More specifically, Plaintiff points to the following variations in Defendant's explanations: (1) at the time of Plaintiff's termination, she was told that she was being terminated because of her bringing her "mother's problems" into the office; (2) on April 28, 2016, BC's submission to the Virginia Employment Commission stated that Plaintiff was being terminated because she "didn't work well with others and refused to work with her manager and lack of productivity," Opp., Ex. 16; and (3) in 2019 and 2021, BC's interrogatory responses stated Plaintiff was being terminated "for poor work performance, low work output, failure to complete assignments in a timely manner, refusal to accept direction and supervision from superiors in the workplace, excessive requests for leave, failure to make up hours taken for leave, failure to be a team player in the Company, insubordination, and unacceptable attitude towards supervisors and co-workers," Opp., Ex. 12 at 2; *id.*, Ex. 13 at 4.

All of Defendant's explanations for Plaintiff's termination fall within the general category of lack of productivity and insubordination. There is no inconsistency among the specific instances of conduct BC has mentioned within that general category and it appears BC's explanations are merely "additional aspect[s] of the same behavior." *Allen Health Sys., Inc.*, 302 F.3d at 835. For these reasons, Plaintiff has failed to present evidence sufficient to warrant an inference of pretext; and Plaintiff has therefore failed to rebut Defendant's legitimate, non-discriminatory reasons for her termination.

## IV. CONCLUSION

For the reasons stated above, it is hereby

ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 68] be, and the same hereby is, GRANTED.

The Clerk is directed to forward copies of this Order to all counsel of record and enter judgment in favor of Defendant.

Anthony J. Trenga
United States District Judge

May 28, 2021
Alexandria, Virginia

18