**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| **NAWAL ALI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 18-cv-1385 (AJT/MSN)** |
| | ) | |
| **BC ARCHITECTS** | ) | |
| **ENGINEERS PLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988(b)**
**AND FOR ATTORNEY SANCTIONS PURSUANT TO 28 U.S.C § 1927**

*"Racial or religious discrimination is odious but*
*a frivolous or malicious charge of such conduct . . .*
*is at least equally obnoxious."[1]*

I.     **INTRODUCTION**

On September 14, 2016 Arinderjit (A.J.) Dhali announced that he was representing

Nawal Ali.  On that day, he filed on behalf of his client an "amended" EEOC charge, which for

the first time designated "race" as a basis for discrimination. ECF 69, BC MSJ, Exhibit 26, at

Bates 3591.  Mr. Dhali's filing was curious for three reasons.  First, Ms. Ali filed her original

EEOC charge on June 22, 2016 and gave no indication that her Arab race played any role in her

treatment or working conditions at BC Architects.  Second, the narrative included with the

---

[1] *Carrion v. Yeshiva Univ.*, 535 F.2d 722, 728 (2d Cir. 1976) (affirming $5,000 attorney fee award to defendant for plaintiff's "baseless, malicious action."

amended EEOC charge filed by Mr. Dhali contained no facts related in any way to Ms. Ali's

race; the summary of particulars was identical in all ways with her original EEOC charge but for

the addition of one sentence on the final page: "I have also learned that since the time of my

termination, the employer hired a male employee to replace me." *Id.* at Bates 3594. Third, one

month ***prior*** to Mr. Dhali's decision to file an amended charge, on August 12, 2016, the EEOC

determined that it did not have jurisdiction over any of Ms. Ali's claims under Title VII because

BC Architects employed fewer than 15 workers during the time of her employment. Exhibit 1,

EEOC Letter, August 12, 2016.  When undersigned counsel alerted Mr. Dhali to the fact that the

EEOC lacked jurisdiction, he wrote the following:

> I am aware.  Naturally we dispute that. I think we meet the jurisdictional threshold.  But
> we can deal with it when you file [your] motions on this matter.  That, and we also plan
> to bring a claim under section 1981, the jurisdictional requirememt [sic] there is 1 or
> more employees.
>
> In short,  I am not worried.

Exhibit 2, Dhali Email to Liebeler, September 14, 2016.

Thus began a nearly five year legal odyssey based entirely on unfounded claims of racial

discrimination under 42 U.S.C. § 1981 that culminated with the Court's entry of summary

judgment in BC Architects' favor on May 28, 2021.  During this span, BC Architects incurred

over $130,000 in legal fees and litigation expenses, none of which was covered by insurance.

Based on a full review of the record in this matter it is evident that the § 1981 race claims

in this suit were wholly concocted by Mr. Dhali at the time he learned that the EEOC had no

jurisdiction and therefore no claims were viable under Title VII.  Unfortunately, his client Nawal

Ali agreed to participate in the charade.  The allegations contained in all three versions of Ms.

Ali's federal court complaint were not well grounded in law or fact, were unreasonable,

groundless, and frivolous.  Mr. Dhali's filing and prosecution of the case without reasonable

basis violate the "bad faith" exception to the American Rule.  Mr. Dhali's conduct throughout the case multiplied the proceedings unreasonably and vexatiously in violation of 28 U.S.C. § 1927.  BC Architects is also entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) because Nawal Ali's suit was frivolous, unreasonable and without foundation when filed, and became even more so as discovery progressed.

Compounding the baseless nature of the allegations in this suit is the fact that Mr. Dhali has personally engaged in, and been sanctioned for, substantially similar conduct in the federal courts before.  His willful disregard of rules and his advancement of frivolous bad faith arguments have resulted in a dismissal with prejudice, monetary sanctions, and multiple admonishments. *See, e.g., Sorto v. Autozone, Inc.*, 821 F. App'x 188, 192-95 (4th Cir. 2020) (dismissing complaint with prejudice for failure to file amended complaint in compliance with Court orders); *Jones v. Campbell Univ.*, 322 F. Supp. 3d 106, 109-10 (D.D.C. 2018) (imposition of $2,500 in sanctions for advancement of frivolous jurisdictional argument: "[t]he decision to continue pressing this frivolous assertion of jurisdiction exceeds the bounds of creative advocacy and some monetary sanction is necessary to deter this sort of behavior in the future."); *Williams v. Verizon Wash., D.C. Inc.*, 322 F.R.D. 145, 150 (D.D.C. 2017) ("Dhali's reported failure to comport with these well-established standards of our profession is lamentable, and may well be unethical; the instant opinion holds only that the conduct is not sanctionable under Rule 11 for the reasons explained above.").

Despite prior court orders sanctioning Mr. Dhali, he has not been deterred in the least. He and Ms. Ali's initiation of this case was without basis from the start; but their pursuit of this case after all evidence clearly showed that there was no basis whatsoever to sustain the race

retaliation claim merits both an attorneys' fee award in favor of BC Architects, and substantial sanctions imposed upon Mr. Dhali himself.

While sanctioning of civil rights plaintiffs and their counsel should not be undertaken lightly, the Fourth Circuit has made clear that such sanctions are appropriate and warranted when an abuse of the judicial system has occurred:

> The authority which federal courts possess, an authority often summoned to the side of racial justice, is an authority built upon respect for judicial process. That authority cannot, in the long run, be effectively invoked on behalf of civil rights enforcement if civil rights litigants could themselves disregard it with impunity.

*Blue v. U.S. Dept. of the Army,* 914 F.2d 525, 535 (4th Cir. 1990).

## II.    PROCEDURAL BACKGROUND

On November 6, 2018, Elyssa Helene Katz Geschwind, Esq. filed a five-count complaint in this Court.  The following counts were pled: (I) "Race Discrimination Under Section 1981"; (II) "Hostile Work Environment & Harassment Under § 1981"; (III) Retaliation Under Section 1981"; (IV) "Violations of the Fair Labor Standards Act (FLSA)"; and (V) "Breach of Contract." On January 2, 2019, Mr. Dhali moved for pro hac vice admission, and this motion was granted on January 8, 2019. ECF Nos. 3, 5 & 6.

BC Architects filed a motion to dismiss the complaint on January 24, 2019 demonstrating that no allegations supported any race-based conduct. ECF 10.  Plaintiff made minor amendments to the original complaint, mostly consisting of inserting the word "Arab" in various paragraphs of the amended complaint. ECF 13; Exhibit 1.  In ¶ 37, Mr. Dhali and Ms. Geschwind also made the following statement with respect to the race of a person who was hired as a structural engineer instead of Ms. Ali: "Upon information and belief, Eid maybe [sic] a different race than Ali."  This statement was a knowing and intentional misrepresentation given that Ms. Ali stated in her April 15, 2016 Email / Letter that Mr. Khalid was "a new immigrant

from Egypt who had just moved to the USA." ECF 69, BC MSJ, Exhibit 20, Bates 3538. Egypt is an Arab country. Thus, the Amended Complaint alleged race discrimination because another Arab was hired instead of Ms. Ali (an Arab).

On February 19, 2019, BC Architects filed a motion to dismiss the Amended Complaint. ECF 17. On that same day, undersigned counsel for BC Architects served a notice upon Plaintiff's counsel directing counsel and their client to preserve all evidence related to Plaintiff's allegations, specifically any and all electronically stored information relating to the allegation that Ms. Ali sent an email to BC Architects' Owners on April 15, 2016 at 3:07 p.m. as alleged in every version of her Complaint.[2] *See* Exhibit 3.

On March 5, 2019, Plaintiff filed an opposition to Defendant's motion to dismiss. ECF 23. Mr. Dhali first intentionally ignored the fact that Khalid Eid (Arab) had been hired by BC as a structural engineer at the same time Bintao Qin (Asian) had been hired. ECF 23, at 6. Additionally, Mr. Dhali included a bizarre, inflammatory, and irrelevant reference to a New York Times Article regarding President Trump and Muslim immigration. ECF 23 at 9, n.17.[3]

On March 29, 2019, the Court held a hearing on the motion to dismiss. Mr. Dhali argued the motion for Plaintiff. He effectively abandoned Ms. Ali's hostile work environment claims ("I will concede it's probably my weakest claim here"; "It's not the strongest hostile work environment claim, I will concede."). Exhibit 4; Tr. at 16-17. In addition, he argued that in all instances in which a person of one race is hired in preference to a person of another race, this allegation (without any further allegations to support an inference of discrimination) would be

---

[2] The allegation regarding the 3:07 p.m. April 15, 2016 Email & Letter was made in the Complaint at ¶ 49 (ECF 1); the First Amended Complaint at ¶ 56 (ECF 13), and the Second Amended Complaint at ¶ 46 (ECF 50).

[3] This irrelevant and inflammatory footnote was reproduced verbatim in Ms. Ali's Brief in the Fourth Circuit. *See* Appeal 19-1582, Appellant's Brief at 15, n.3.

sufficient to support a § 1981 claim and defeat a motion to dismiss. Exhibit 2; Tr. at 17-19. There is no case in any jurisdiction that supports this premise and this was not a good faith reasonable effort to modify existing and well-settled law in this area.  The Court noted that Ms. Ali's allegation that another person was hired was not sufficient, standing alone, to sustain a race discrimination claim, without even addressing the fact that an Mr. Eid (an Arab) had been hired as well. Exhibit 4, Tr. at 18-19.

On May 1, 2019, the Court granted BC Architects' motion to dismiss the Amended Complaint.  The Court dismissed Counts I-IV for failure to state a claim, and dismissed Count V for lack of subject matter jurisdiction. ECF 26.

On May 13, 2019, BC Architects filed its motion for attorneys' fees. ECF 27.  On May 24, 2019, Ms. Ali noted an appeal. ECF 32.  On May 28, 2019 the Court ordered that Defendant's motion for attorneys' fees be held in abeyance pending a ruling from the Court following the Court of Appeals ruling.[4]  ECF 35.

On June 5, 2019 undersigned counsel sent an email to Mr. Dhali asking again for any proof that the April 15, 2016 Email & Letter was authentic and requesting that Plaintiff withdraw her appeal based on this lack of authentication.  Exhibit 5, Liebeler / Dhali Email Exchange, June 5, 2019.   Mr. Dhali simply replied with bluster: "I understand all defense counsel exaggerate the merits of their defense but this one is taking the cake."  He refused to provide any evidence to support the authenticity of the email.  At that juncture, Mr. Dhali had been provided with affidavits by Mr. Quinn and Mr. Morin describing the extensive and yet fruitless search for the Email & Letter and denying any knowledge of the Email & Letter.  Defendant also provided

---

[4] Defendant hereby incorporates by reference the original Motion for Attorneys' Fees and Costs currently held in abeyance. ECF 27.

documentary evidence subpoenaed from BC Architects' third party email hosting company that no such email was sent or received within BC's email system.  Nonetheless, Mr. Dhali and Ms. Ali pressed forward with their appeal based in large measure on the alleged April 15 Email & Letter.[5]  The Email & Letter make no reference to race discrimination.

On October 15, 2020, the Fourth Circuit affirmed the dismissal of Count I (Race Discrimination) and Count II (Hostile Work Environment). ECF 42.  The Court also affirmed the dismissal of a portion of the race retaliation claim, but carved out the portion of the claim based on the March 30, 2016 oral complaint and the April 15 Email & Letter. ECF 42 at 10-11.  The Court of Appeals based its reversal of the retaliation claim on the following allegations in Ms. Ali's Amended Complaint: (i) the oral report of racial discrimination on March 30, 2016; (ii) a satisfactory work performance throughout her tenure; (iii) two denials of reasonable requests to work from home (April 4 & 7), and (iv) her termination on April 15, 2016.

On January 7, 2021, Mr. Dhali filed a Second Amended Complaint (SAC).  ECF 50. Prior to this filing, Ms. Geschwind had withdrawn as local counsel and Ms. Monique Miles had replaced her in the case. ECF 45 & 47.  The SAC again included the allegation that Kalid Eid was hired in discriminatory racial preference to Ms. Ali even though he was also an Arab. ECF 50 at ¶ 29-31.  Mr. Dhali also repeated the claim that Ms. Ali complained about race discrimination on March 30 and was denied requests for work from home twice, on April 4 and April 7. ECF 50 at ¶¶ 40-43.  The SAC also repeated the claim that the Email & Letter were sent by Ms. Ali at 3:07 p.m. ECF 50 at ¶ 46.   The SAC then alleged "on information and belief" that

---

[5] Ms. Ali appealed the three counts based on 42 U.S.C. § 1981.  She did not appeal the dismissal of the FLSA and breach of contract claims.

the BC Owners read the email she sent at 3:07 p.m.[6]  Mr. Dhali made no attempt to respond or address the information and affidavits provided to him demonstrating that the Email & Letter were never in the BC email server / system.  Finally, despite the fact that four of the original five claims had been dismissed from the suit, Mr. Dhali ***increased*** the monetary demand from $1 million to $3 million. ECF 50 at p. 14.

The parties engaged in extensive written and deposition discovery from January through March 12, 2021.  BC filed its motion for summary judgment on April 2, 2021 (ECF 68); Ms. Ali opposed the motion on April 23, 2021 (ECF 76) and BC filed its Reply brief on April 29, 2021 (ECF 79).  The Court held a hearing on BC's Motion for Summary Judgment on May 5, 2021. Immediately following argument on the motion, Mr. Dhali filed an unauthorized supplement with additional exhibits in opposition to the motion on May 5, 2021. ECF 81.

The Court granted the motion for summary judgment on May 28, 2021. ECF 82.

## III.    LEGAL STANDARD

There are three different legal doctrines that support the imposition of sanctions on attorneys and parties for engaging in improper conduct: Rule 11 of the Federal Rules of Civil Procedure; the "bad faith" exception to the American Rule; and 28 U.S.C. § 1927.  In addition, 42 U.S.C. § 1988(b) authorizes an attorney fee award to the prevailing party in a § 1981 case.

The Fourth Circuit's seminal opinion in *Blue v. U.S. Department of the Army,* 914 F.2d 525 (4th Cir. 1990) explained that there is "significant overlap" among the different justifications for sanctions and that "several of the theories can be invoked to justify punishment of the same

---

[6] At least one federal court has concluded that when an allegation is made "on information and belief" it "implies that the Plaintiff has no factual basis underlying the conclusory allegations to put before the Court." *Wimer & Assoc., PC v. Thiel (In re Thiel)*, 2015 U.S. Dist. LEXIS 21961, at *14 n.4 (W.D.N.C. Feb. 24, 2015).

conduct." 914 F.2d at 534.  "[A]ll share the common goal of the efficient litigation of meritorious suits and the deterrence of suits so patently meritless that their pursuit constitutes an abuse of the judicial system." *Id.* at 533.

Rule 11 mandates that every pleading, motion, or other paper filed with the court be the product of a "inquiry reasonable under the circumstances" on the part of the attorney or party signing the document, and that the document be "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it ... not [be] interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11; *Blue,* 914 F.2d at 533.[7]

Under the "bad faith" exception to the American Rule, a court may award attorneys' fees against a losing party or attorney who has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–59 (1975) (quoting *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129 (1974)); s*ee Blue,* 914 F.2d at 533.

Finally, 28 U.S.C. § 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy ***personally*** the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Emphasis added; s*ee Blue,* 914 F.2d at 533.

In *Blue,* the plaintiff initiated and prosecuted a multi-party race discrimination suit against her Army superiors at Fort Bragg in North Carolina.  Ms. Blue and a colleague (Ms. Harris) filed their complaint with no specific allegations to support their claim of race

---

[7] Defendant does not move for sanctions at this time pursuant to Fed. R. Civ. P. 11(c)(2).  The Court has the authority to issue an order to show cause why Rule 11 has not been violated pursuant to Rule 11(c)(3).

discrimination.  Extensive discovery unearthed no evidence to support their claims.  Ultimately,

the Court determined that the claims rested only on Ms. Blue's "gut feeling" that criticism or

failure to promote her was based on race discrimination.  914 F.2d at 542. The court wrote:

> The court makes clear that this is a case in which plaintiffs Blue and Harris leveled widespread charges of racial discrimination without any regard for the truth of their allegations, abandoned frivolous claims without notice after the Army had spent significant amounts of time and money preparing to rebut them, and perjured themselves, all in order to harass and embarrass the personnel at Fort Bragg; and, further, that this is a case in which counsel failed to perform their responsibilities of investigating the foundation for their clients' claims, failed to examine much of the material turned over to them in discovery, and simply pressed forward with their case heedless of whether the claims they were pursuing were legitimate ones.
>
> Such conduct is undoubtedly sanctionable under the theories employed by the district court.

*Id.* at 544.

In addition to the "bad faith" exception and § 1927, the Court in this is empowered to

make an attorney fee award under 42 U.S.C. § 1988(b).  At the discretion of the Court, a

prevailing defendant is entitled to an award of attorneys' fees in a § 1981 race discrimination

case.  42 U.S.C. § 1988(b); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).

The Fourth Circuit has made clear that a prevailing defendant does not have to show bad faith on

the part of plaintiff's attorney in order to merit an award of attorneys' fees, but a bad faith

finding strengthens the claim to fees:

> In any action or proceeding to enforce [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Section 1988 makes no distinction on its face between prevailing plaintiffs and prevailing defendants. In *Christiansburg Garment Co. v. EEOC*, however, the Supreme Court ruled that prevailing defendants should receive attorneys' fees only when the plaintiff's claim was "frivolous, unreasonable, or groundless," or when "the plaintiff continued to litigate after it clearly became so." 434 U.S. at 422. The Court made clear that a plaintiff need not have acted in bad faith in order to be liable for fees, although if he did, "there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Id.* at 422.

*Hutchinson v. Staton*, 994 F.2d 1076, 1080 (4th Cir. 1993).  Pursuant to § 1988(b) and

*Christiansburg Garment*, Defendant BC is the prevailing party, and based on the "frivolous,

unreasonable or groundless" nature of the Plaintiff's allegations (and the continuation of

litigation on the retaliation after discovery confirmed that it was baseless), is entitled to an award

of attorneys' fees.  A court may also award attorneys' fees to a successful defendant on a

proportional basis if it determines some claims are frivolous and some are not. *Fox v. Vice,* 563

U.S. 826 (2011).

## IV.     ANALYSIS

The four counts dismissed by this Court on May 1, 2019 were frivolous, unreasonable,

and without basis.  The retaliation count that was dismissed, reversed and remanded, and

dismissed again on summary judgment on May 28, 2021 was also frivolous, unreasonable, and

without basis.  The entire record in this matter shows that the claims were not made or pursued in

good faith.  An analysis of each count shows that an award of attorneys' fees and the imposition

of sanctions is appropriate.

### A.     The Race Discrimination Claim Under § 1981

Despite the sweeping breadth of Ms. Ali's Amended Complaint, her counsel, Mr. Dhali,

stated at the oral argument on March 29, 2019 that the race discrimination allegations were

confined solely to the structural engineering position: "I think the defendant has overstated my

case. My race claim is very specific, and it's in regards to her being denied the structural

engineering position." Exhibit 4; Tr. at 12-13.  Ms. Ali's allegations regarding race

discrimination consisted solely of claiming that two men (one Chinese and one Arab) were hired

for a structural engineering position instead of Ms. Ali.  There is no authority in any court to

suggest that a race discrimination claim under § 1981 may lie solely on these grounds.  On its

face the claim is patently unreasonable and frivolous.

A deeper inquiry into the race discrimination claim, however, shows something more

cynical.  Ms. Ali and Mr. Dhali knew from Day One that two persons were hired as structural

engineers in late 2015. ECF 13; Amended Complaint (AC) at ¶ 34.   One was Bintao Qin

(alleged to be Chinese), and the other was Khalid Eid. AC at ¶ 34, 36.  But, in Exhibit 20 to BC's

Motion for Summary Judgment (ECF No. 69), Ms. Ali alleges that Mr. Eid was "a new

immigrant from Egypt."  Egypt of course is an Arab country.  Nonetheless, in the Amended

Complaint at ¶ 37, Ms. Ali simply obfuscates by writing: "Upon information and belief, Eid

maybe [sic] of a different race than Ali."  It is a vast understatement to characterize this claim as

"frivolous"; it is simply dishonest.  A race discrimination claim cannot be based upon a claim

that a person from the same race was hired in racial preference to the Plaintiff.  Ms. Ali and Mr.

Dhali both knew that Mr. Eid was Arab; the claim that "Eid maybe of a different race than Ali"

was false; adding the phrase "upon information and belief" does not magically convert a

falsehood to truth.  In addition, during deposition, Ms. Ali revealed that she had no inkling of the

comparative qualifications of Qin, Eid, and herself.  ECF 69, BC MSJ, Exhibit 1, Ali Dep. Tr. at

45.  Indeed, Ms. Ali steadfastly maintained that BC engaged in race discrimination when it hired

Mr. Eid (Arab) as a structural engineer instead of Ms. Ali (Arab). *Id.* at 47 ("Yeah").

All of the information undermining the concept of a race discrimination claim against BC

Architects was known to Nawal Ali and to her counsel A.J. Dhali at the time the original

complaint was filed through the dismissal by this Court and the affirmance by the Court of

Appeals.  Nonetheless, client and counsel pursued the case relentlessly and unreasonably to the

end subjecting BC Architects to significant legal fees.  This conduct violates 28 U.S.C. § 1927;

the conduct also warrants an award of attorneys' fees under the "bad faith" exception and under

42 U.S.C. § 1988(b).

### B.    The Hostile Work Environment Claim Under § 1981

As noted above, Mr. Dhali characterized Nawal Ali's hostile work environment claim as

"not the strongest hostile work environment claim, I will concede." Exhibit 4, Tr. at 17.  That is a

vast understatement.  There was no allegation in the complaint or amended complaint that

anyone at any time ever referred to Ms. Ali's race or her ethnic characteristics; not once in her

entire year-plus of work at BC Architects.

She alleges she was orally reprimanded for arriving at work at 12 noon without prior

notice on September 30, 2015. ECF 13, AC at ¶ 16.  On October 1, 2015, she sent an email

describing the incident in great detail to the Company Owners.  AC at ¶ 19.  The email says

nothing about discrimination of any kind, let alone race and no racial epithets were used; the

incident is a garden-variety office interaction that occurs every day in offices around the globe.

*See* ECF 69, BC MSJ, Exhibit 28.  Even when Ms. Ali recounted the September 30 incident

again seven months later in her "complaint letter" dated April 15, 2016, she makes no statements

related to her race or ethnic characteristics. ECF 69, BC MSJ, Exhibit 20.  Nor is there any

reference to any language that could be deemed abusive or inappropriate.  It is frivolous and

unreasonable to make race discrimination claims when the primary pieces of written evidence

created contemporaneously by the Plaintiff herself directly refute any claim of hostility or racial

animus; neither the email nor the "complaint letter" say anything about race discrimination and

simply describe a workplace dispute in which she was late for work and failed to carry her

assigned share of the Company workload.

The Amended Complaint also presented this hopelessly illogical justification for racial hostility: "The ethnic characteristics of Iranians are Shia.  The ethnic characteristics of Syrians are Sunni. There has been a long history of racial animosity between Shias and Sunnis in the Middle East." ECF 50, AC at ¶ 17.  Shias and Sunnis are, of course, religious classifications, not racial classifications.

Ms. Ali also alleged that Mr. Quinn and Mr. Morin asked her if she would be travelling into Syria on her vacation in October 2015 and this inquiry constituted a hostile work environment.  ECF 50, AC at ¶¶ 24-26.  The Company Owners were obviously concerned for her well-being, and no reasonable person would interpret their questions in any other way.[8]

At oral argument, however, Mr. Dhali summarized the hostile work environment claim as follows:

> The circumstantial evidence in here showing bias towards Arab citizens is that when she came back from Syria, she was demoted. When she came back from Syria, her position was given to an American citizen. And, of course, the final bias statement was that we don't want you here because you're bringing your mother's problems to work.

Exhibit 4; Tr. at 16-17.  Counsel's powers of ratiocination are completely absent in his presentation of the foregoing allegations as support for a hostile work environment claim.  There is nothing hostile about a demotion; the conduct described is not remotely "severe or pervasive," and an alleged demotion has no relationship with the work environment.

There is no caselaw support for a subjective standard under the "bad faith" exception to the American Rule or 28 U.S.C. § 1927, but what did Mr. Dhali know about hostile work environment law when he filed the complaint on behalf of Ms. Ali in November 2018?

---

[8] The BBC News Service published an article on October 1, 2015 with the following title *Syria conflict: Russia's intervention lifts crisis to new level*. Available at: https://www.bbc.com/news/world-middle-east-34418849.  Objectively speaking, it is beyond doubt that any person travelling to Syria in 2015 would be subject to danger given the civil war in that country.

- In 2012, he was lead counsel in *Cole v. Boeing Co.*, 845 F. Supp. 2d 277 (D.D.C. 2012). The *Cole* court dismissed his client's hostile work environment case after explaining the "severe and pervasive" standard under Title VII. *Id.* at 287 (leave to amend denied as futile by 901 F.Supp. 2d 47 (2012));

- In 2016, Mr. Dhali sued Domino's Pizza / Team Washington alleging hostile work environment on behalf of his client.  Domino's filed a motion to dismiss and Mr. Dhali conceded he had no proof to support the claim.  Judge Leon wrote:

  > Team Washington, Inc. moved to dismiss, with prejudice, Counts VII and VIII (disability discrimination and hostile work environment based on disability under the DCHRA) of plaintiff's eight-count complaint. In his belated response, plaintiff concedes dismissal of these counts and offers no substantive support for the claims, but requests a without-prejudice dismissal "were the Plaintiff to discover additional evidence."  Because plaintiff presents no reason for his late-filed response, expressly concedes dismissal, and wholly fails to offer any factual or legal argument in support of these counts, I find that dismissal with prejudice is warranted.

*Hedgman v. Domino's Pizza*, No. 15-00313 (RJL), 2016 U.S. Dist. LEXIS 201654, at *2 (D.D.C. Feb. 7, 2016) (citations to record omitted);

- On November 1, 2018, just five days prior to filing the Complaint in this action, the D.C. Circuit Court of Appeals summarily affirmed a district court judgment against Mr. Dhali's client in another hostile work environment case. *Warren v. Weichert*, No. 18-5131, 2018 U.S. App. LEXIS 31110 (D.C. Cir. Nov. 1, 2018).  In that case, the district court granted summary judgment to the employer, writing: "Without any apparent connection to the plaintiff's protected class or protected activity, there is no basis from which a reasonable jury could conclude that OPM created a hostile work environment." W*arren v. Pon*, 304 F. Supp. 3d 165, 182 (D.D.C. 2018).

Most instructive, however, is Mr. Dhali's 2016 **_successful_** appeal in *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208 (4th Cir. 2016).  The conduct aimed at an Arab employee in the workplace was indeed severe, pervasive, and demonstrably impaired the working conditions of the employee.  Furthermore, direct racial remarks were alleged and proved. 828 F.3d at 223-27.

Therefore, by November 2018, Mr. Dhali had extensive experience in this field of law and clearly is charged with the ability to discern a facially plausible claim from an implausible, weak, and frivolous claim.  His decision to plow forward against BC Architects in November 2018 with a wholly baseless, frivolous, and unsubstantiated claim of hostile work environment violates the "bad faith" exception to the American Rule, 28 U.S.C. § 1927, and warrants an award of attorneys' fees against the Plaintiff under 42 U.S.C. § 1988(b).

### C.    The FLSA and Contract Claims

In addition to the defective and frivolous race discrimination claims, there was never any factual or legal basis for an FLSA or contract claim in this court.  The FLSA claim was time barred long before the Complaint was filed.  The amendment alleging "intentional" violations of the FLSA was a clumsy and obvious attempt to plead around the two year statute of limitations. There was no factual basis for the intentional allegation and counsel for Ms. Ali offered none at oral argument. Exhibit 4, Tr. at 20.

No attorney acting in good faith could conceivably bring a suit in federal court for breach of contract in the sum of $770.  On the face of the Complaint and Amended Complaint the parties are both residents of Virginia.  The contract claim was brought in bad faith without any factual or legal basis and Mr. Dhali made no attempt to defend it at the hearing. *Id.* at 21.

### D.        The Race Retaliation Claim Under § 1981

The two bases for Ms. Ali's race retaliation claim consisted of her treatment after her March 30, 2016 oral complaint to the Company Owners, and her April 15, 2016 alleged Email and Letter.  The full record on discovery now demonstrates that Ms. Ali and her counsel wildly misrepresented both grounds for her retaliation claim.  The imposition of sanctions and an award of attorneys' fees are justified.

### 1.        The Day After March 30, 2016

It is simply not plausible that Ms. Ali forgot that one day after she complained to BC on March 30, 2016 that she requested and was granted permission to work from home.  It was her birthday; Chris Morin wished her happy birthday.  She worked from home. ECF 69, BC MSF, Exhibit 6.  This information immediately destroys any connection between her March 30 oral complaint and future employment related activity.  Had Ms. Ali and Mr. Dhali included this information in the Amended Complaint is there any question that the Court of Appeals would have affirmed the District Court's original dismissal of this entire case?  Clearly not; the Court of Appeals placed great weight in relying upon Plaintiff's allegations in the Amended Complaint that the next relevant event after March 30 (the alleged protected activity date) was the supposed unreasonable denial of a request to work from home made by Ms. Ali on April 4. ECF 13; AC at ¶ 52.  The intentional effort to hide the March 31 grant of her request to work from home misled the Court of Appeals.

Further, the Court of Appeals reasonably interpreted Mr. Dhali's ¶ 52 of the amended complaint to mean that Ms. Ali requested permission to work from home two times: April 4 and April 7.  As demonstrated in BC's motion for summary judgment this was not true either.  She simply announced to the Company that she would not come to work on April 4; she requested

permission to work from home on April 7. ECF 69, BC MSJ, Exhibits 10 & 12.  The April 7

request was denied because she owed the Company 22 hours at that time, and her sick leave

balance was a negative 8.2 hours. ECF 69, BC MSJ, Exhibit 11.  Mr. Quinn told her explicitly

that "your productivity here at the office has not been great." *Id.* at Exhibit 12.  She was not

meeting the employer's legitimate expectations for work and she well knew this because BC had

informed her exactly how many hours she was missing and her own emails acknowledged this

fact.

    All these facts were certainly known by Ms. Ali when she authorized the filing of all

three complaints in this matter and prosecuted her appeal.  Mr. Dhali and his local counsel knew,

or with a bare minimum of effort should have known, this information as well.  Counsel's failure

to inquire of their client whether the Company had granted her request to work from home ***after***

her alleged protected activity merits sanctions in the form of an attorney fee award under § 1927.

Further, the evidence adduced in discovery demonstrated that on the day of her oral complaint

about being supervised by Company Project Manager Sohrab Bagherzadeh, she walked off the

job 6 hours early.  ECF 69, BC MSJ, Fact 6.  By the time she was fired, she owed the Company

30 hours of work and had failed to complete three projects in a timely manner.  The concept that

she could allege in good faith that she was performing at a satisfactory level is frivolous.

    Mr. Dhali's bad faith attempt to use an unauthenticated document in deposition and in

opposition to the motion for summary judgment to prove that Ms. Ali did not owe the Company

any hours was unreasonable and vexatious. *See* ECF 76-18, Ali Opp. to MSJ, Exhibit 16.

Further, Mr. Dhali breached all notions of civility and decorum when challenging Mr. Quinn's

testimony that he had never seen the document: "Other than today, is your testimony that 'yeah,

judge, I've got no idea what the hell that is?'" ECF 76-5, Ali Opp. to MSJ, Exhibit 3, Quinn Tr. at 26.

### 2.      The April 15, 2016 Email & Letter That Was Never Sent

BC Architects spent tens of hours of attorney time defending the allegation that Ms. Ali was terminated in retaliation for her alleged April 15, 2016 Email and Letter.  The defense began even prior to the time Mr. Dhali filed the complaint in November 2018, but it ended when Ms. Ali and Mr. Dhali simply abandoned the claim during summary judgment briefing and at oral argument on May 5, 2021.  Although Plaintiff's briefing in response to the motion for summary judgment regarding the Email & Letter was jumbled and largely incoherent (ECF 76 at 17-19), Plaintiff's response to BC undisputed Fact No. 29 acted as a full admission that the claim had no merit.  Fact 29 stated that BC had made the decision to fire Ms. Ali ***before*** the April 15 Email & Letter was allegedly transmitted; thus, no causation.  Plaintiff denied the fact and instead took the position that BC had already made the decision to fire Ms. Ali ***earlier*** in time – either April 7 or April 8. ECF 76-1 at p. 13, Response to Fact 29.  Thus, on April 23, 2021 – the date of Plaintiff's Opposition to the BC Motion for Summary Judgment, and nearly 2 ½ years after initiating suit, Plaintiff conceded the alleged Email & Letter played no role in Ms. Ali's termination.  At oral argument on May 5, Mr. Dhali admitted that the decision to fire Ms. Ali was made well before April 15 and thus no retaliation claim could relate to the April 15 Email & Letter.

This "never mind" abandonment is tantamount to the voluntary dismissal of frivolous claims late in the case that merited an award of sanctions in *Blue v. U.S. Dept. of the Army,* 914 F.2d 525, 532 & 543 (4th Cir. 1990).  In *Blue,* the Court of Appeals made clear that pre-suit

investigation is critical, but also critical is Plaintiff's obligation to immediately dismiss claims when discovery shows them to be utterly baseless:

> Thus, counsel cannot simply rely on a client's patently incredible testimony when any reasonable investigation of the factual bases for the client's claims or examination of materials obtained in discovery would reveal the paucity and implausibility of the evidence.

*Id.* at 543.

BC has explained in detail all facts showing that the Email & Letter were never transmitted by Ms. Ali.  ECF 69, BC MSJ at 32-33.  It is worth repeating, however, that Ms. Ali destroyed all evidence which would in fact have permitted an actual forensic analysis of when, where, and how the Email & Letter were actually created and/or transmitted.  Ms. Ali's interrogatory response states that she "recycled" the computer in which she wrote the letter. ECF 69, BC MSJ, Exhibit 27, Ali Response to I-11 at p.12.   She "lost" the thumb drive containing the file she allegedly brought to the BC workplace to send the Email & Letter. *Id.* at p.14.  This occurred despite the fact that undersigned counsel issued a preservation letter to Ms. Ali's counsel (Mr. Dhali and Ms. Lisa Bertini) at the very outset of the case on February 19, 2019. Exhibit 3.  Undersigned counsel requested that Mr. Dhali provide proof of the authenticity of the Email & Letter again on June 5, 2019, but Mr. Dhali refused to do so. Exhibit 5.

The evidence is overwhelming that Ms. Ali never sent an April 15, 2016 email or "complaint letter" to anyone at BC Architects.  Legal counsel for Ms. Ali had full knowledge in the defect in her claims well before her EEOC charge was filed and well before this suit was filed.  Nonetheless, Ms. Ali and her counsel pushed recklessly forward, imposing thousands of dollars of attorneys' fees upon her former employer.

### 3.     The Hunt for Pretext

On February 1, 2021 Mr. Dhali requested that the Electronically Stored Information (ESI)

discovery team for Defendant's co-counsel Cohen Seglias use the following search terms in BC

Architects' email database: "Syria, Turkey, Muslim, Moslem, terrorist, jihadi, bomb, terminate,

fire, mother, mom."  The ESI team ran these searches for Mr. Dhali.  Defense counsel also

searched for a wide variety of other terms plausibly related to the claims made by Plaintiff in the

case including "Arab," "Arabic," and "race."  No documents, emails, or communications of any

relevance to the case were found using these search terms.

The final production of Defendant's document was made on February 16, 2021.  As

described in BC's Motion for Summary Judgment, the documents conclusively showed, *inter

alia,* that BC allowed Ms. Ali to work from home on March 31, that BC planned to fire Ms. Ali

well before her alleged Email & Letter on April 15, that Ms. Ali failed to complete at least three

work assignments between March 30 and April 15, and that Ms. Ali owed the Company 30 hours

of work as of the day she was terminated.  No documents were located that supported any

inference of pretext, discriminatory animus, or retaliatory motive.

But Mr. Dhali, local counsel Ms. Miles, and their client pressed on with the retaliation

claim after February 16, 2021, causing BC to incur thousands of dollars of attorneys' fees and

costs.

### E.     Mr. Dhali's Prior Conduct

Attorney sanctions under 28 U.S.C. § 1927 have a twin purpose – to deter repeated

abusive litigation practices and to compensate parties who have suffered injury as a result of the

abusive practices.   As the Seventh Circuit has noted, this is a slightly different emphasis than the

exclusively deterrent-based philosophy underlying Rule 11:

> It does not necessarily follow, however, that the deterrent role played by section 1927 sanctions requires a court to ascertain the most modest sanction that will deter an offending attorney (and others) from further misconduct and then to set the sanction at that amount, regardless of the costs that the offending attorney's conduct has imposed on his opponents. Whereas that obligation is incorporated into the express terms of Rule 11, for example, *see* Fed. R. Civ. P. 11(c)(4), section 1927 has no such parsimony provision.

*Tate v. Ancell*, 551 F. App'x 877, 895 (7th Cir. 2014), *citing Hamilton v. Boise Cascade Express*, 519 F.3d 1197 (10th Cir. 2008).  In *Tate,* the Court of Appeals affirmed the District Court's order requiring plaintiff's counsel in a § 1981 case to reimburse the prevailing defendant a total of $92,226.17 in costs and attorneys' fees.  The *Tate* court found that

> There were at least two problems with relying on sections 1981 and 1983 in this case. First, section 1981 addresses race-based interference with one's contractual rights, and Fedder never identified a shred of evidence suggesting that the Addus defendants were in any way motivated either by racial animus or a desire to punish Tate for having opposed racial discrimination. Tate's theory was that the alleged conspiracy was aimed at punishing him for having opposed sexual harassment in the workplace.

*Tate v. Ancell*, 551 F. App'x 877, 897 (7th Cir. 2014).  The *Tate* facts and analysis are directly on-point here where Ms. Ali and Mr. Dhali have never identified a "shred of evidence" suggesting that BC was motivated by racial animus or a desire to punish Ms. Ali for opposing racial discrimination.  Similarly, in *Blue* there was no evidence of race discrimination and the District Court found the case was frivolous.  The Fourth Circuit affirmed attorney sanctions of $30,000 against lead counsel Mr. Chambers, and party sanctions against Mr. Harris ($17,000) and Ms. Blue ($13,000). 914 F.2d 525, 532 & 548.  The sanctions were imposed in 1987 and affirmed in 1990.

In assessing the appropriateness of an attorney fee monetary sanction against Mr. Dhali, it is relevant to note that prior sanctions and admonishments have had little or no effect upon his conduct.  In *Sorto v. Autozone, Inc.*, 821 F. App'x 188, 192-95 (4th Cir. 2020), the Fourth Circuit affirmed the District Court's order dismissing Mr. Dhali's complaint with prejudice for repeated

failure to follow court orders and local rules. The *Sorto* court quoted extensively from District

Court's oral ruling:

> [T]he court's rules govern the proceedings before it and what I'm terribly concerned about is [counsel] is unable to accept that basic concept that *Rule 8* calls for a short and plain statement of the case. He's not done that. He's persisted in filing complaints that read like a dime-store novel, are dripping with sarcasm towards opposing counsel. And I'm not confident we'll ever get forward at all in this case as long as [counsel] is at the helm of the Plaintiff's case. And I'm deeply troubled by his behavior, deeply troubled by his attitude toward the court and deeply troubled by his attitude towards discovery issues in this case. . . . I'm going to grant the motion to dismiss with prejudice of the complaint in this case. I regret that that step is necessary. But I just see complete indifference and defiance of the court's order. I've laid out what needs to be done to comply and what I've gotten is further noncompliance.

*Id.* at 194. Judge Wynn concurred with the majority in dismissing the complaint with prejudice,

but filed a dissenting opinion concluding that the employee had stated a valid cause of action

under § 1981 for race discrimination. *Id.* at 195-96.

In *Jones v. Campbell Univ.*, 322 F. Supp. 3d 106, 109-10 (D.D.C. 2018), Mr. Dhali made

a novel argument that the U.S. District Court for the District of Columbia could assert personal

jurisdiction over North Carolina defendants, and that each and every federal judge in North

Carolina's Eastern District should be recused. The *Jones* court transferred Mr. Dhali's case to

North Carolina and sanctioned him $2,500:

> This Court is loath to impose sanctions under *Rule 11* and does not take requests to do so lightly. But it finds that some monetary sanction here is warranted. As this Court's memorandum opinion made clear, no attorney who engaged in a reasonable inquiry into current law could argue, in good faith, that a district judge sitting in the District of Columbia may declare that an entire bench of judges on another district court are subject to mandatory recusal. Nor is there any reasonable way to construe existing law to allow an exercise of personal jurisdiction over defendants based only on an assertion of bias among judges in another forum. Jones's amended complaint asked this Court to accept not just one of those ideas, but both. And to the extent that Jones's counsel was genuinely arguing to change the law to either effect, that argument must be deemed frivolous.

322 F. Supp. 3d at 109.

In *Williams v. Verizon Wash., D.C. Inc.*, 322 F.R.D. 145, 150 (D.D.C. 2017), Mr. Dhali filed suit on behalf of his client claiming that the employee was denied FLMA leave and called into work sick then he was actually sick.  During discovery, both contentions were proved demonstrably false.  The employee's own records showed that he was not denied FLMA leave, and records also showed that the employee purchased a non-refundable airline ticket to New Orleans two days ***before*** he called in "sick." *Id.* at 147.  Verizon counsel contacted Mr. Dhali and asked that he withdraw his claim on the basis of this evidence:

> In response to Verizon's request, Dhali purportedly replied, "No, I'm good", and thereafter allegedly called Verizon's sanction motion "nonsense" and warned Verizon that it "severely underestimate[s]" him and that he would "stake [his] reputation on this case." Dhali also allegedly took other retaliatory actions, including taking additional depositions that, in Verizon's view, have not advanced Plaintiff's case, and inventing entirely new facts and legal theories to support the post-filing developments.

*Williams v. Verizon Wash., D.C. Inc.*, 322 F.R.D. 145, 147 (D.D.C. 2017) (citation to record references omitted).  The court determined that Mr. Dhali's conduct did not violate Rule 11 because the rule only addresses knowledge counsel obtained ***prior*** to filing a pleading or paper. However, the court did conclude that although Rule 11 sanctions were not warranted, the conduct was not ethical:

> [The Court] does not condone Dhali's alleged conduct. Verizon asserts that, when confronted with the facts, Dhali obstinately refused to conform his complaint to his own shifting factual allegations and legal theories, and also employed a less-than-professional tone when communicating with opposing counsel.  This Court expects that all attorneys who appear before it will treat fellow attorneys with respect, and that, as officers of the Court, each will promptly apprise the Court of subsequent developments that render prior material representations inaccurate or misleading. *See* D.C. Rules of Professional Conduct 3.3(a)(1) (providing that a lawyer shall not knowingly "fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"); LCvR 83.8(e) (providing that attorneys admitted to the Bar of this Court shall swear to conduct themselves according to "the recognized standards of ethics of our profession"). Dhali's reported failure to comport with these well-established standards of our profession is lamentable, and may well be unethical; the instant opinion holds only that the conduct is not sanctionable under Rule 11 for the reasons explained above.

322 F.R.D. at 150 (citation to record references omitted).  There is no explanation on the record why Verizon did not seek sanctions under 28 U.S.C. § 1927.

     While of no material consequence to the outcome of this case, Plaintiff's counsel continued his habit of flouting the rules, most recently in connection with his opposition to the motion for summary judgment.  Mr. Dhali violated Local Rule 56(B) which required him to include a section listing all material facts as to which Plaintiff contends there is a genuine issue.  *See* ECF 82*;* May 28, 2021 Order at 3, n.2.  Mr. Dhali included no corresponding section within the page allotment of his brief (35 pages), and instead filed a separate single spaced 13-page supplement to his brief with factual argument, deposition testimony, excerpts from exhibits, and legal citations to EEOC enforcement manuals. ECF 76-1.[9]

     One final example: in each of his three complaints filed in this Court, Mr. Dhali alleged that at the time BC fired her Mr. Quinn said "you are causing a lot of problems within the company. You are bringing your mother's problems [of Arabic immigration to the United States] to the company." ECF 1 at ¶ 55; ECF 13 at 63; ECF 50 at ¶ 53.  Although Mr. Quinn denied under oath making any statement of this nature, the source of the quoted material is obviously the Plaintiff Nawal Ali.  But the bracketed material "[of Arabic immigration to the United States]" appears to be an invention of and insertion by Plaintiff's counsel.  Mr. Dhali's technique of inserting speculative material in the midst of a verbatim statement allegedly made by Mr. Quinn (the opposing party) is tantamount to Mr. Dhali simply testifying himself with no personal knowledge.  Mr. Dhali is not clairvoyant; he was not present at the BC workplace on April 15,

---

[9] Despite the admonishment from Judge Titus in the *Sorto* case to eliminate the sarcasm and "dime store novel" approach to legal drafting, the following appears in Mr. Dhali's "Statement of Disputed Facts:" "Giving them all the time to delete whatever email they wanted deleted from the server, only to now puff their chest saying 'Judge, there is no murder weapon, set us free. We are not crooks!'" ECF 76-1, at 9, Response to Fact 22.

2016.  It is grossly inappropriate for him to inject his personal beliefs into a quoted statement of a third party.  This conduct comes quite close, if not over, the line established by Rule 3.3 of the Rules of Professional Conduct: "A lawyer shall not knowingly make a false statement of fact or law to a tribunal."

For Plaintiff's counsel, the ends justify the means and rules are for other folks to follow; he clearly does not believe they apply to him.

## V.    ATTORNEYS' FEES INCURRED BY BC ARCHITECTS

None of the foregoing conduct was harmless error.  BC Architects has now incurred over $130,000 in legal fees and expenses defending this frivolous matter.  Upon direction of the Court, pursuant to Fed. R. Civ. P. 54(d)(2)(C), BC will submit full and complete billing records showing daily time entries, time, rates, and tasks.

The majority of the work was performed by lead counsel Lars H. Liebeler, Esq.  Standard Laffey Rates for Mr. Liebeler during the time period of the suit ranged from $894 to $914 per hour.[10]  Under the USAO Laffey Matrix Mr. Liebeler's rates range from $602 to $694.[11]  Mr. Liebeler's normal hourly rate for corporate clients ranges from $500 to $725 per hour.  Due to close personal relationship with BC principals, Mr. Liebeler discounted his normal rate to $350 per hour for the entire duration of the case.  Thus, the fees summarized below have been discounted approximately 50% below market rate.  Likewise, Jackson Nichols of Cohen Seglias who performed sustained work on the case discounted his rate significantly as well – from $370 to $295 per hour.

A summary of the fees and costs incurred by BC Architects is set forth below:

---

[10] The Laffey Matrix may be found at the following url: http://www.laffeymatrix.com/see.html.

[11] The U.S. Attorneys' Office Laffey Matrix may be found at the following url: https://www.justice.gov/usao-dc/page/file/1305941/download

| Time Period | Task or Stage of Litigation | Approximate # of Hours | Loadstar Fee |
|---|---|---|---|
| May 2016 to October 2016 | Review and respond to two EEOC charges; file motion to dismiss EEOC charges; forensic exam of April 15, 2016 Email & Letter. | Lars H. Liebeler (LHL): 16.98 | LHL: $5,943 |
| November 2018 to May 2019 | Factual research; legal research; prepare two motions to dismiss; court hearing on motion to dismiss; prepare initial disclosures; respond to discovery; prepare and file motion for attorneys' fees. | LHL: 79.25 Jackson S. Nichols (JSN): 29.4 | LHL: $27,737.50 JSN: $8,673 |
| June 2019 to December 2020 | Further forensic work in connection with April 15, 2016 Email & Letter; U.S. Court of Appeals Briefing; analyze 4th Circuit Opinion. | LHL: 32.5 JSN: 2.6 | LHL: $11,375 JSN: $767 |
| December 2020 to Present | Interview witnesses; document discovery; legal research; depositions; prepare motion for summary judgment; summary judgment hearing. | LHL: 155.19 JSN: 37.0 Cohen Seglias Paralegal and ESI Coordinator: 42.6 | LHL: $54,316.50 JSN: $10,915 CS/ESI: $8,307 |
| Total Attorneys' Fees | | | $128,034 |
| Expert Forensic Analysis | | | $2,800.00 |
| ESI Database Preparation and Search Operations & Copies & Litigation Expenses | | | $2,201.55 |
| Estimated Grand Total | | | $133,035.55 |

## VI.    CONCLUSION

An attorney fee award under 42 U.S.C. § 1988(b) is assessed against the party – here Nawal Ali.  Sanctions under 28 U.S.C. § 1927, including "excess costs, expenses, and attorneys; fees" are imposed upon legal counsel – here Arinderjit Dhali and his local counsel Ms. Geschwind and Ms. Miles.  All are culpable for the pursuit of this baseless suit.

Ms. Ali knew that she was granted leave to work immediately following the March 30 meeting; she knew why she was denied permission to work from home one time (April 7) – lack

of productivity; she knew that she failed to complete the "Carville," "MD3818Whiteford," and "Porterwood" CAD projects in April 2016, and; she knew she owed the Company 30 hours of time.

Mr. Dhali and his co-counsel knew, or should have known, all these relevant facts by simply asking Ms. Ali.  Based on Mr. Dhali's experience and training he also knew that there was no hostile work environment based on race or any other protected class.  He knew that Khalid Eid was an Arab and therefore there was no colorable claim of race discrimination in the hiring of a structural engineer.  Once he learned the true facts in this matter he had a professional obligation to inform his client there was no basis to file suit, or pursue any of the five counts after filing.  He and his co-counsel failed to meet that obligation repeatedly throughout this case.

The Court has significant discretion in apportioning any award of fees and sanctions. Undersigned respectfully suggest that legal counsel Mr. Dhali should be responsible for 75% of BC Architects' legal fees, and Ms. Ali should be responsible for 15%.  Ms. Geschwind and Ms. Miles, as counsel of record appear to have "rubber-stamped" each filing prepared by Mr. Dhali.[12] But they also bear responsibilities as officers of the court to insure that each filing is well grounded in fact and law.  They failed to meet this responsibility and should each bear 5% of the fees and costs.

Defendant moves for an entry of an award of attorneys' fees and sanctions and requests leave to submit a detailed statement of tasks undertaken, hours worked, and billable rate in support of the fee petition within seven days of the Court's Order granting Defendant's entitlement to fees and costs and imposing sanctions.

---

[12] There is at least circumstantial evidence to suggest that Ms. Geschwind simply provided Mr. Dhali with her EDVA ECF login credentials and failed to exercise any oversight over what Mr. Dhali filed. *See* ECF 14 and Clerk's Notice dated February 12, 2019.

Dated: June 11, 2021.

Respectfully submitted,

*/s/ Jackson S. Nichols*
Jackson S. Nichols, Esq. (VSB # 87225)
Casey J. McKinnon, Esq. (VSB # 84197)
Cohen Seglias Pallas Greenhall & Furman PC
900 7th Street, N.W., Suite 725
Washington, D.C.  20001
(202) 466-4110
JNichols@CohenSeglias.com

--and—

*/s/ Lars H. Liebeler*
Lars H. Liebeler, Esq.
*(admitted pro hac vice*)
Lars Liebeler PC
900 7th Street, N.W., Suite 725
Washington, D.C. 20001
(202) 774-1510
LLiebeler@LHL-LawFirm.com

## **CERTIFICATE OF SERVICE**

This is to certify that I have on June 11, 2021 served all the parties in this case with this

**Motion and Memorandum in Support of Attorneys' Fees** in accordance with the notice of

electronic filing ("ECF"), which was generated as a result of electronic filing in this court.

*/s/ Jackson S. Nichols*
Jackson S. Nichols, Esq.