IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NAWAL ALI, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:18-cv-01385 |
| | ) |
| BC ARCHITECTS ENGINEERS, PLC., | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## ORDER

Defendant BC Architects Engineers, PLC ("BC") has filed a Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988(b) and for Attorney Sanctions Pursuant to 28 U.S.C. § 1927, [Doc. No. 84] (the "Motion").[1] For the reasons stated below, and upon consideration of the Motion, the materials submitted in support thereof and in opposition thereto, and the arguments of counsel presented at the hearing held on July 14, 2021, Defendant's Motion for Attorneys' Fees and Sanctions is GRANTED in part and DENIED in part.

### I. BACKGROUND

**A. Procedural History**

On June 22, 2016, Plaintiff[2] filed her original EEOC charge, alleging discrimination based on sex, religion, national origin, and retaliation. [Doc. No. 69-24] at 2. On September 14, 2016, counsel for Plaintiff, A.J. Dhali filed on Plaintiff's behalf an amended EEOC charge designating,

---

[1] Also pending is Defendant's Expedited Motion to Extend the Time for Appeal Pursuant to Fed. R. Civ. P. 58(e) [Doc. No. 89], which Defendant in effect amended through her filing a Motion to Extend the Time to Appeal [Doc. No. 90], which are DENIED as moot in light of the Notice of Appeal filed on June 16, 2021 [Doc. No. 91], and the subsequent now adjudicated appeal with respect to the Court's summary judgment Order [Doc. No. 113]. Also pending is Ali's Rule 60 Motion for Reconsideration of Order Denying the Hearing Scheduled for 7/14/2021 [Doc No. 106], which the Court also DENIES as moot.

[2] The Plaintiff is listed as "Newel Ali" in the original Complaint, [Doc. No. 1], "Nawel Ali" in the Second Amended Complaint, [Doc. No. 50], and "Nawal Ali" in the Opposition to the Motion for Summary Judgment, [Doc. No. 76].

for the first time, race and age as a basis for discrimination, along with the previously-asserted bases of sex, religion, national origin, and retaliation. [Doc. No. 69-26] at 2. On November 6, 2018, Plaintiff filed the original Complaint in this matter. [Doc. No. 1]. On February 11, 2019, Plaintiff filed a First Amended Complaint ("FAC") alleging five counts of discrimination under 42 U.S.C. § 1981, as well as violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), and breach of contract in connection with the termination of her employment with Defendant. [Doc. No. 13]. On May 1, 2019, the Court dismissed all five counts in the FAC. [Doc. No. 25].

On October 15, 2020, the Fourth Circuit affirmed the dismissal of Plaintiff's race discrimination and hostile work environment/harassment claims under § 1981, her FLSA claim and her breach of contract claim. *Ali v. BC Architects Engineering, Plc*, 832 F. App'x 167 (4th Cir. 2020) *as amended* (Oct. 16, 2020) [Doc. No. 39]. The Court of Appeals also affirmed the dismissal of her § 1981 retaliation claim based on her denial of a promotion to structural engineer in December 2015, after she had complained about race discrimination within the company roughly three months before applying for the position. *Id.* at 9-10 ("[T]he temporal proximity between that reporting and BC's failure to select her for the position is too tenuous to support a reasonable inference of causation[]" and "any inference of retaliation is further weakened by the operative complaint's allegation that Ali was not selected for the structural engineer position because she was more valuable to BC as a CAD drafter.") However, the Fourth Circuit concluded that Plaintiff had plausibly alleged a § 1981 retaliation claim based on the temporal proximity between her alleged protected activity reflected in her March 30, 2016 oral complaint to Defendant's owners and her April 15, 2016 email "documenting discrimination and retaliation within the company" and her termination "an hour after she sent her [April 15, 2016] email." *Id.*

2

at 4. In support of that ruling, the Fourth Circuit further pointed to Plaintiff's allegations that "her work performance was satisfactory throughout her tenure" and "that in the time between her March 30 report and her firing, she was twice denied reasonable requests to work from home to care for her sick son." *Id.* at 10.[3] "Taking these allegations together," the Fourth Circuit concluded, "we are satisfied that Ali has plausibly stated a retaliatory-termination claim under § 1981." *Id.* at 11

On January 7, 2021, Plaintiff filed a Second Amended Complaint tailoring her claim to the Fourth Circuit's order. [Doc. No. 50] (the "SAC"). On April 2, 2021, Defendant moved for summary judgment. [Doc. No. 68]. On May 28, 2021, after a hearing, the Court entered summary judgment in Defendant's favor, concluding that, while Plaintiff had established a *prima facie* case of retaliation based solely on the temporal proximity of her protected activity on March 30, 2016 and her termination on April 15, 2016, Defendant had proffered legitimate, non-retaliatory and non-discriminatory reasons for terminating Plaintiff's employment and Plaintiff could not show that Defendant's proffered reasons were pretext for discrimination. [Doc. No. 82].

On June 11, 2021, Defendant filed the pending Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988(b) and for Attorney Sanctions Pursuant to 28 U.S.C. § 1927. [Doc. No. 84].[4] On June 16, 2021, Plaintiff filed a notice of appeal with respect to the Court's entry of summary judgment [Doc. No. 91]. On December 29, 2022, the Fourth Circuit, in a *per curiam*

---

[3] The Fourth Circuit also observed that the "contradiction [between her allegation that she reported racial discrimination on March 30, 2016 and the substance of her April 15, 2016 email] is insufficiently clear to override our obligation to accept the operative complaint's factual allegations as true" and, in any event, "because we rely on Ali's March 30, 2016 oral complaint of race discrimination to resolve whether the district court properly dismissed her retaliatory-termination claim, we need not decide whether Ali's April 15, 2016 email also complained of racial discrimination, as the complaint indicates she subjectively believed." *Ali v. BC Architects Engineering, Plc*, 832 F. App'x 167, 173, n.5 (4th Cir. 2020), *as amended* (Oct. 16, 2020).

[4] On July 4, 2021, Defendant also filed a Motion for Rule 11 Sanctions against Plaintiff's counsel, [Doc. No. 98], which it subsequently withdrew after Plaintiff's opposition. *See* [Doc. No. 101]; [Doc. No. 102] (citing *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) ("Because the rule [11] requires that the party submitting the challenged pleading be given an opportunity to withdraw the pleading, sanctions cannot be sought after summary judgment has been granted.")).

3

opinion, affirmed, without oral argument, the Court's Order granting summary judgment in Defendant's favor on Plaintiff's Section 1981 retaliatory termination claim. [Doc. No. 113]. On January 20, 2023, the mandate issued. [Doc. No. 115].

**B. Background Facts**

The Court provided a detailed overview of the facts in its Order granting the Defendant's Motion for Summary Judgment. *See* [Doc. No. 82]. Briefly summarized, in March 2015, BC hired Plaintiff as a computer assisted design (CAD) drafter and her employment was terminated on April 15, 2016. SAC ¶ 6. Plaintiff was supervised by Project Manager Sohrab Bagherzadeh and by BC owners Brian Quinn and Chris Morin.

On Friday, March 25, 2016 at 12:10 a.m., Plaintiff informed Quinn and Morin that she was unable to come to work after returning from her vacation and proposed that she "make up the hours." [Doc. No. 69-1] (Ali Dep. Tr. at 51-52); [Doc. No. 69-3] at Bates 2064. Plaintiff did not make up any hours owed to BC over the weekend of Saturday March 26 and Sunday March 27, 2016. [Doc. No. 69-1] (Ali Dep. Tr. at 53-55).

On Wednesday March 30, 2016, Plaintiff met with Quinn and Morin and complained to Quinn and Morin that her "assignment ha[d] been assigned to [Bagherzadeh]" and expressed frustration at having "to work under [Bagherzadeh's] supervision" when she "was a project coordinator" and had been working on this particular client's projects "ever since she came to the company" and had "so much experience with this client." Plaintiff then "reminded [Quinn and Morin] [of] the way [Bagherzadeh] treated [her]," saying he treated her "differently" and "never stop[ped] harassing" her; Plaintiff also "complain[ed] about discrimination," saying she "fe[lt] like there [wa]s discrimination at this company." *Id.* at 14–15 (quoting Ali Dep. 75: 1–10). She left the

4

office shortly after that meeting and worked only two hours that day in the BC office, reporting to Quinn and Morin that she needed to make up six hours for that day. [Doc. No. 69-5] at Bates 2594.

Over the next eight days, Plaintiff continued to accumulate missing work hours, such that by Friday, April 8, 2016, Plaintiff had 30 work hours to make up. Mem., Ex. 17 (Morin Affidavit ¶ 7); *id.*, Ex. 18 (Quinn Affidavit ¶ 12). Relevant in this regard for the purposes of the Motion is the following:

- On Thursday, March 31, 2016, Plaintiff emailed Quinn and Morin, requesting permission to work from home. [Doc. No. 69-6] at Bates 2311. Morin responded by wishing her a "Happy Birthday," and granted her permission to work from home. *Id.* Plaintiff responded, "Thank you so much :)." *Id.*

- As of Friday, April 1, 2016, Plaintiff had 14 work hours to make up and told Quinn and Morin that she was planning to work over the weekend of Saturday, April 2 and Sunday, April 3, 2016 to make up the hours. [Doc. No. 69-7] at Bates 2349.

- On Sunday, April 3, 2016, Plaintiff informed BC that she did not "have a chance to work from home this weekend. I was very busy." [Doc. No. 69-9] at Bates 2353.

- On Monday, April 4, 2016, Plaintiff did not come to work or perform any work for BC because she said her son was ill. [Doc. No. 69-10] at Bates 2363. She did not request permission to work from home. *Id.* Morin wrote to her and said with respect to her son: "I hope he's ok." *Id.*

- On Wednesday, April 6, 2016, Morin wrote to Plaintiff and informed her that she had 20 work hours to make up and she had negative 8.2 hours of sick time. [Doc. No. 69-11] at Bates 2595. (The actual number of hours listed as owed to the Company by

5

- Plaintiff was 22: eight hours from March 25; six hours from March 30; and eight hours from April 4). *Id*.

- On Thursday, April 7, 2016 at 8:29 a.m., Plaintiff requested permission to work from home because her son had a fever. [Doc. No. 69-12] at Bates 2654-55. Quinn responded to Plaintiff's request by writing: "Sorry—but your productivity here at the office has not been great. Take care of your child and come in when he's healthy. You already owe us a lot of hours as it is. Working from home is not approved." *Id.* Plaintiff responded, "Okay." *Id*.

- On Friday, April 15, 2016, at 1:04 p.m., Quinn wrote in an email that BC intended to terminate Plaintiff at 4:00 p.m. that afternoon. [Doc. No. 69-22] at Bates 3364 ("We will fire her at 4pm."); *see also id.*, [Doc. No. 69-18] (Quinn Affidavit ¶ 10); *id.*, [Doc. No. 69-17] (Morin Affidavit ¶ 10).

Plaintiff claims that at 3:07 p.m. on April 15, 2016, she sent Quinn and Morin an e-mail dated April 15, 2016,[5] attaching a three-page complaint letter with the first line "04/15/2016 at 2:45 pm." [Doc. No. 69-20] at Bates 3537–3543 (hereinafter the "Email and Complaint Letter").[6]

---

[5] Quinn and Morin both have testified under oath that they did not receive or read the Email and Complaint Letter prior to the time the Company terminated Plaintiff on April 15, 2016. Mem., Ex. 17 ¶¶ 14–15; *id.*, Ex. 18 ¶¶ 14–15. Plaintiff did not request a "delivery receipt" or a "read receipt" for the Email and Complaint Letter, Mem., Ex. 1 (Ali Dep. Tr. at 135), or take any other actions to confirm that Quinn or Morin actually received the Email and Complaint Letter, *id.*, Ex. 1 (Ali Dep. Tr. at 135-36). Neither Quinn nor Morin was able to locate the Email and Complaint Letter in subsequent searches conducted in May 2016. *Id.*, Ex. 18 (Quinn Affidavit ¶¶ 14-17); *id.*, Ex. 17 (Morin Affidavit ¶¶ 13-14). The BC information technology manager searched the BC email system in May 2016 and was unable to locate the Email and Complaint Letter in the BC email system. *Id.*, Ex. 21 (Wolozyn Declaration ¶ 9). Fat Cow, BC's email vendor, was tasked with searching for any emails in the BC email system from NAli@bcplc.com to cmorin@bcplc.com and bquinn@bcplc.com on April 15, 2016 at 3:07 p.m. and/or at any time between 1:00 p.m. and 5:00 p.m. and the Fat Cow technical representative was unable to locate any information on the email." *Id.*, Ex. 21 (Wolozyn Declaration ¶ 10) and *id.* (Bates 3532-34) (Fat Cow Search Result Ticket).

[6] In the Email and Complaint Letter, Plaintiff states that "I am writing this complaint letter because I experienced female gender discrimination and retaliation in you [sic] company." [Doc. No. 69-20] at Bates 3538. She then recounts the instances since her employment that she regarded as "proof to me that you have a female discrimination in your company." *Id*. Those included claims that females received lower raises than men, were not selected for promotions and jobs as engineers in preference to men, and were not allowed to leave early from work or work from home while

On April 15, 2016, at 4:00 p.m., Quinn and Morin met privately with Plaintiff and terminated her employment. SAC ¶ 49; [Doc. No. 69-18] (Quinn Affidavit ¶ 11); [Doc. No. 69-17] (Morin Affidavit ¶ 11).

## II. STANDARD OF REVIEW

### A. 42 U.S.C. § 1988(b)

42 U.S.C. § 1988, provides, in relevant part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . . , or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

*Carr v. Super 8 Motel Devs., Inc.*, 964 F. Supp. 1046, 1048 (E.D. Va. 1997). Attorney's fees and costs under § 1988 may be awarded against a Plaintiff, in the Court's discretion, where the Plaintiff's action was frivolous, unreasonable, or without foundation. *Christiansburg*, 434 U.S. 412, 421 (1978). "Such awards should be permitted not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious." *Id.* (citations and quotation marks omitted); *see also Carr*, 964 F. Supp. at 1049 ("Defendants may recover attorneys' fees only if the district court finds 'that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'") (quoting *Christiansburg*, 434 U.S. at 421) (applying the *Christiansburg* standard to motions for attorney's fees under § 1981 brought pursuant to § 1988).

### B. 28 U.S.C. § 1927

Section 1927 of Title 28 of the U.S. Code states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case

---

men were. *Id.* at Bates 3539-3540. Overall, Plaintiff asked "So why this unfair treatment and discrimination against female." *Id.* at Bates 3540.

> unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 is focused on remedying abuse of the court process. "If an attorney needlessly multiplies a proceeding, then he may be liable for the costs of such extraneous litigation." *Stradtman v. Republic Servs., Inc.*, 121 F. Supp. 3d 578, 580–81 (E.D. Va. 2015) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 756 n. 3 (1980) (noting that § 1927 provides only for *excess* costs incurred as a result of multiplication, not the entire cost of the litigation)). Section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law." *DeBauche v. Trani,* 191 F.3d 499, 511 (4th Cir.1999) (quoting *Roadway Express,* 447 U.S. at 762, 100 S. Ct. 2455). "Thus, an attorney who files a meritless claim may not be sanctioned under § 1927 if he does not multiply the proceedings." *Stradtman*, 121 F. Supp. 3d at 580. Likewise, an attorney who wins a verdict on a meritorious claim may still face sanctions if he does baselessly multiply the proceedings. *DeBauche,* 191 F.3d at 511. Bad faith on the part of the attorney must also be present. *McKenzie v. Norfolk S. Ry. Co.,* 497 Fed. Appx. 305, 312 (4th Cir. 2012).

### III.   ANALYSIS

**A. Defendant's Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988(b) and for Attorney Sanctions Pursuant to 28 U.S.C. § 1927 [Doc. No. 84]**

**1. Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988(b)**

Defendant contends that none of Plaintiff's federal court complaints were well grounded in law or fact. In that regard, Defendant characterizes the § 1981 race retaliation claim as concocted

8

to circumvent an EEOC jurisdictional issue that would preclude any Title VII claims[7] and the § 1981 race retaliation claim as lacking any basis in fact (as confirmed through the discovery process and the Court's entering summary judgment in its favor on that claim). In particular, Defendant contends that discovery clearly refuted the factual allegations that the Fourth Circuit relied on to reverse this Court dismissal of that claim and remand that claim for further consideration.[8]

In opposition, Plaintiff argues: (1) section 1981 claims and Title VII claims are often brought in tandem and were not brought to avoid the jurisdictional bar; (2) counsel did not make up the theory of race discrimination; (3) the cases in which counsel was previously sanctioned were different; (4) this case was not frivolous because the Court found that Plaintiff had established a *prima facie* case of retaliation under § 1981; and (5) pretext can be circumstantial and there was circumstantial evidence based on the Defendant's "shifting reasons" for Plaintiff's termination.

For essentially the reasons stated in connection with the Court's award of attorney's fees under 28 U.S.C. § 1927, discussed below, an award of attorney's fees in favor of the Defendant would be warranted under 42 U.S.C. § 1988(b). However, in assessing whether to award fees

---

[7] Defendant argues that on August 12, 2016, the EEOC determined that it did not have jurisdiction over any of Plaintiff's Title VII claims because Defendant employed fewer than 15 workers during the time of Plaintiff's employment. *See* [Doc. No. 85] at 2. One month later, Dhali attempted to file a purported amended EEOC charge that raised new allegations of race discrimination against Plaintiff despite knowledge that the EEOC lacked jurisdiction over any of the claims. *Id*. Defendants argue that this action was unsupported by any factual allegation, and the improper procedural maneuver reflected a continuing pattern of advancing baseless claims and frivolous arguments over the ensuing five-year litigation.

[8] Defendant also points to other cases in which Mr. Dhali has been sanctioned. *See, e.g., Sorto v. Autozone, Inc.*, 821 F. App'x 188, 192-95 (4th Cir. 2020) (dismissing complaint with prejudice for failure to file amended complaint in compliance with court orders); *Jones v. Campbell Univ.*, 322 F. Supp. 3d 106, 109-10 (D.D.C. 2018) (imposing $2,500 in sanctions for advancement of frivolous jurisdictional argument: "[t]he decision to continue pressing this frivolous assertion of jurisdiction exceeds the bounds of creative advocacy and some monetary sanction is necessary to deter this sort of behavior in the future."); *Williams v. Verizon Wash., D.C. Inc.*, 322 F.R.D. 145, 150 (D.D.C. 2017) ("Dhali's reported failure to comport with these well-established standards of our profession is lamentable, and may well be unethical; the instant opinion holds only that the conduct is not sanctionable under Rule 11 for the reasons explained above.") (Jackson, J.) The same pattern of sanctionable behavior has not been shown for the other attorney's representing the Plaintiff.

against the Plaintiff, the Court has considered the likely financial impact on the Plaintiff, the overarching policy in favor of providing a remedy for discrimination, the legal nature of the unwarranted positions taken, and the degree to which any adverse impact of an award against an unsuccessful plaintiff would discourage future litigants with colorable claims from pursuing such a remedy. *See Arnold v. Burger King Corp.*, 719 F.2d 63, 68 (4th Cir. 1983) ("Indeed, fee awards that callously disregard the financial straits of a losing plaintiff would soon defeat the overarching remedial purposes of Title VII by discouraging all but the airtight cases.") (internal quotation marks omitted) (citing *Christiansburg*, 434 U.S. at 422). In that regard, the Court does not doubt that Plaintiff was sincere in her subjective belief that she was wrongfully terminated and that she was justified in initially bringing this action. More dispositive is that the reasons that would justify a fee award are at their core legal issues and positions taken during the litigation that a lay person, such as the Plaintiff, would likely not appreciate or control. In short, and as discussed below, the conduct that would warrant a fee award is attributable principally to the decisions made by Plaintiff's counsel, against whom fees may not be awarded under Section 1988. *See Mitchell v. AT&T Corp.*, 1999 U.S. App. LEXIS 13752 at *3-4 (4th Cir. June 22, 1999) (per curiam) ("As attorneys are not personally liable for costs and fees under 42 USC §1988 or 42 USC §2000e-5(k), the award cannot be sustained under those statutes.") (*ref.*, *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 761 n. 9 (1980)); *cf.*, *Gibson v. City of Alexandria*, 855 F. Supp. 133, 136 (E.D. Va. 1994) (holding that attorney's fees could not be awarded against plaintiff's counsel under § 1988, but awarding fees based on the "tortured history of misconduct by plaintiff's counsel" under Rule 11). For these reasons, the Court will not award fees against the Plaintiff under Section 1988, but for the reasons stated below, the Court will award fees against Plaintiff's Counsel, Mr. Dhali, pursuant to 28 U.S.C. § 1927.

**2. Motion for Attorney Sanctions Pursuant to 28 U.S.C. § 1927**

An award of attorney's fees and costs is warranted against Plaintiff's counsel under 28 U.S.C. § 1927 with respect to Plaintiff's retaliation claim for the period beginning with the filing of Plaintiff's opposition to BC's summary judgment motion.

By the end of discovery, Plaintiff's counsel knew, or should have known, that the core allegations the Fourth Circuit found sufficient to plausibly state a retaliation claim were non-existent. As demonstrated by the summary judgment record, Plaintiff's work performance was far from "satisfactory throughout her tenure," as she alleged. In that regard, as of April 1, she had accumulated a substantial deficit in her work hours and sick leave and failed to make up her work hours from home as she promised on April 2 and 3. *See* [Doc. No. 69-9] at Bates 2353 (Plaintiff's Sunday, April 3, 2016, note to BC that she did not "have a chance to work from home this weekend. I was very busy.") Then on Monday, April 4, 2016, without requesting permission, Plaintiff did not come to work or perform any work for BC, with no comment from Defendant other than "I [Morin] hope he's [Ali's son's] ok."

Discovery similarly established as baseless Plaintiff's allegation that in retaliation of her March 30, 2016 complaint, Defendant did not give her permission to work from home on March 31 and April 7. In fact, on Thursday, March 31, 2016, Plaintiff emailed Quinn and Morin, requesting permission to work from home, [Doc. No. 69-6] at Bates 2311, and Morin responded by wishing her a "Happy Birthday" and granting her permission to work from home, with Plaintiff responding, "Thank you so much." And while Plaintiff was not permitted to work from her home on April 7, she was nevertheless given permission to stay home that day because of her son's fever. *See* [Doc. No. 69-12] at 2 ("Sorry—but your productivity here at the office has not been great. Take care of your child and come in when he's healthy. You already owe us a lot of hours as it is.

11

Working from home is not approved."). In addition, emails produced in discovery demonstrated that Defendant made the decision to terminate Plaintiff before the April 15 Email and Letter was allegedly sent (indeed, at the summary judgment hearing, Plaintiff's counsel abandoned any possible retaliation claim based on the April 15 Email and Letter). As a result, it was clear by the close of discovery, at the latest, that any arguable causal relationship between her alleged March 30 and April 15, 2016 complaints and her April 15, 2016 termination based on any temporal proximity was refuted as a matter of law by BC's clearly legitimate, non-retaliatory justification for her termination and the lack of sufficient evidence of pretext, as stated in the Order granting summary judgment. *See* [Doc. No. 82] at 17 ("All of Defendant's explanations for plaintiff's termination fall within the general category of lack of productivity and insubordination.").

"[D]ogged pursuit of a colorable claim becomes actionable bad faith once the attorney learns (or should have learned) that the claim is bound to fail." *In re TCI, Ltd.,* 769 F.2d 441, 445 (7th Cir. 1985). "No longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim." *Blue v. U.S. Dep't of Army*, 914 F.2d 525, 542 (4th Cir. 1990) (quoting *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir. 1985)). The Fourth Circuit has affirmed sanctions under §1927 in similar circumstances as in this case when the asserted legal argument is contradicted by large amounts of unrebutted evidence and undercut by glaring inconsistencies in the plaintiff's account of events. *See, e.g.*, *id*. at 542 ("Undoubtedly there are instances in which an attorney acts irresponsibly by failing to investigate the facts behind his client's claim and by instead relying solely on the client's testimony to support his case.") Moreover, where, as here, there is a "prolonged maintenance of a frivolous suit well after the close of discovery, the establishment of a prima facie case will not invariably immunize plaintiffs and their counsel from sanctions." *Blue*,

914 F.2d at 537; *see also Introcaso v. Cunningham,* 857 F.2d 965, 967–68 (4th Cir.1988) ("[I]t is possible for a plaintiff to establish a prima facie case . . . which is nonetheless groundless. . . ."). These precepts are particularly applicable here. After the close of discovery, following the Fourth Circuit's decision, Plaintiff's counsel should have recognized that the allegations that preserved Plaintiff's retaliation claim on appeal were factually false and that any claim of retaliation against the Defendant based on either the March 30 oral complaint or the April 15 Email and Letter was entirely groundless.

Nonetheless, in opposing summary judgment Plaintiff's counsel continued to advance the baseless claim that the Plaintiff was terminated in retaliation for engaging in protected activity when the documentary and testimonial evidence within his possession clearly and undisputedly refuted any such claim. As a result, Plaintiff's counsel prolonged and multiplied these proceedings with unwarranted filings and argument, some of which contained immaterial *ad hominem* attacks against the Defendant's employees, *see e.g.*, [Doc. No. 95] at 6 n. 13 ("[The BC owners] are petty thieves..."), thereby forcing the Defendant to expend time and resources to rebut these unsubstantiated arguments. Plaintiff's counsel then continued to multiply these proceeding by pursuing a meritless appeal. In sum, Plaintiff's counsel "multiplie[d] the proceedings …unreasonably and vexatiously" when, following the close of discovery, he opposed Defendant's motion for summary judgment based on a factually untenable argument and then appealed the Court's order granting summary judgment, all of which constitutes bad faith for the purposes of Section 1927. *See E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012) ("Bad faith on the part of the attorney is a precondition to imposing fees under § 1927."); *Blair v. Shenandoah Women's Ctr., Inc.*, 757 F.2d 1435, 1436 (4th Cir. 1985) (reciting district court's findings of bad faith, which included "'dilatory tactics,' 'frivolous' legal positions, and their 'scandalous'

13

accusations" to affirm the imposition of sanctions under § 1927); *Sweetland v. Bank of Am. Corp.*, 241 Fed. Appx. 92, 97-98 (4th Cir. 2007) (per curiam) (holding that § 1927 sanctions were appropriate in part based on pursuing unsupported allegations at summary judgment); *Byrd v. Hopson*, 108 Fed. Appx. 749, 756 (4th Cir. 2004) (affirming § 1927 sanction against an attorney who filed multiple claims with no factual basis) (per curiam); *Zamora v. Enter. Rac. Of Md. LLC*, 2020 U.S. Dist. LEXIS 242307 at *7-8 (E.D. Va. December 7, 2020) (awarding attorney's fees under § 1927 against an attorney who continued to press meritless claims and who had been previously sanctioned for similar behavior in different civil actions).

For the above reasons, an award of attorney fees and costs pursuant to 28 U.S.C. § 1927 is warranted.

### IV. CONCLUSION

For the reasons stated above, it is hereby

ORDERED that Defendant's Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988(b) and for Attorney Sanctions Pursuant to 28 U.S.C. § 1927 (the Motion) [Doc. No. 84] be, and the same hereby is, GRANTED in part and DENIED in part; it is DENIED as to an award of fees and costs against Plaintiff under 42 U.S.C. § 1988 but GRANTED as to an award of fees and costs against A.J. Dhali under 28 U.S.C. § 1927 for the period beginning with Defendant's responding to Plaintiff's opposition to its Motion for Summary Judgment (on April 23, 2021) through the final disposition of the second appeal and the final disposition of this Motion [Doc. No. 84]; and it is further

ORDERED that Defendant file its request for attorney's fees and costs in accordance with this Order, with supporting documentation, within 30 days of this Order; and it is further

ORDERED that Defendant's Motion to Extend the Time to Appeal [Doc. No. 90] be, and the same hereby is, DENIED as moot; and it is further

ORDERED that Defendant's Motion for Sanctions Pursuant to Rule 11 [Doc. No. 98] be, and the same hereby is, deemed WITHDRAWN; and it is further

ORDERED that Ali's Rule 60 Motion for Reconsideration on Order Denying the Hearing Scheduled for 7/14/2021 [Doc No. 106] be, and the same hereby is, DENIED as moot.

The Clerk is directed to forward copies of this Order to all counsel of record.

_____
Anthony J. Trenga
Senior U.S. District Judge

March 31, 2023
Alexandria, Virginia